IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ABBEY FARKAS,                              )
                                           )
        Plaintiff,                         )
                                           )      Civil Action No.  2:13-cv-00926-LPL
                v.                         )
                                           )      Chief Magistrate Judge Lisa Pupo
RICH COAST CORPORATION, JULIE O.           )      Lenihan
UFEMA and LANCE J. UFEMA d/b/a             )
GROUP 13 PRODUCTIONS,                      )      ECF Nos. 11 & 13
                                           )
        Defendants.                        )

## OPINION

LENIHAN, Chief M.J.

        Currently before the Court for disposition are the Motion to Transfer Venue pursuant to

Federal Rule of Civil Procedure 12(b)(3) and/or to Dismiss Pursuant to Rule 12(b)(6) (ECF No.

11) filed by Defendants Julie O. Ufema and Lance J. Ufema d/b/a Group 13 Productions, and the

Motion to Transfer Venue Pursuant to Rule 12(b)(3) and/or to Dismiss Pursuant to Rule 12(b)(6)

(ECF No. 13) filed by Defendant Rich Coast Corporation.   In this action, Plaintiff, Abbey

Farkas, asserts claims for copyright infringement in violation of her exclusive rights under 17

U.S.C. §101 *et seq.*, the underpayment and nonpayment for work performed in violation of the

Fair Labor Standards Act, 29 U.S.C. §201 *et seq.,* the Pennsylvania Wage Payment and

Collection Law, 43 Pa. Cons. Stat. §260.1 *et seq.,* and the Pennsylvania Minimum Wage Act of

1968, 43 Pa. Cons. Stat. §333.10 *et seq.*, as well as state common law claims for abuse of civil

process, wrongful use of civil proceedings, and negligence.

        For the reasons set forth below, the Court will grant Defendants' motions to transfer

venue to the Middle District of Pennsylvania.[1]   Moreover, because the Court will grant the motions to transfer venue, it will leave Defendants' motions to dismiss under Rule 12(b)(6) for the transferee court to decide.

## I.   BACKGROUND INFORMATION & PROCEDURAL HISTORY

Plaintiff Abbey Farkas was allegedly employed by Julie Ufema and Lance Johnson Ufema ("Jason Ufema"),[2] and/or Group 13 Productions, and/or Rich Coast Corporation ("Rich Coast") from August 2011, to on or about, November 9, 2011.  (Compl. at ¶¶ 20, 42 (ECF No. 1)).  Rich Coast is a Pennsylvania corporation with a principle place of business located at 41 Meadowbrook Lane, Lewistown, Pennsylvania, 17044. (*Id.* at ¶16.) Group 13 Productions is a fictitious name of a partnership whose partners consist of Julie Ufema and Jason Ufema,[3] which is also located at the above stated address. (*Id.* at ¶19.)

Plaintiff alleges that she was employed by Defendants as a film editor, editing raw movie footage into final cut footage, as part of an independent film project entitled *Caveat*. (*Id.* at ¶¶20-21.) She further alleges that she performed the film editing under the Ufemas' direction. (*Id.* at ¶25.)  According to Plaintiff, she received emails from Julie Ufema on Julie's Rich Coast email account during standard business hours on weekdays with regard to the film editing work. (*Id.* at ¶¶26, 28.)  Plaintiff alleges that Julie Ufema meetings concerning film production were held at the 41 Meadowbrook Lane address. (*Id.* at ¶30.)   Plaintiff contends that she performed editing

---

[1] Because the Court will grant the motion to transfer venue, it will leave Defendants' motion to dismiss under Rule 12(b)(6) for the transferee court to decide.

[2] Lance Johnson Ufema also goes by the name Jason Ufema.  Lance W. Ufema is the President of Rich Coast and the father of Jason Ufema.  In order to avoid confusion, the Court will refer to Lance Johnson Ufema as "Jason Ufema" throughout this opinion.  Lance W. Ufema will be referred to as "Lance Ufema" or "Lance Sr."

[3] Defendants Julie Ufema and Jason Ufema d/b/a Group 13 Productions are collectively referred to as the "Ufemas."

work at both 41 Meadowbrook Lane and at 5477 Bartlett Street, Pittsburgh, Pennsylvania, 15217. (*Id.* at ¶31.)

Pursuant to the oral agreement between the parties, Plaintiff was paid the sum of $750.00 by check mailed to the 5477 Bartlett Street address. (*Id.* at ¶46.) This amount was the total for her first month's wages, along with, her lodging from August 2011, until October 12, 2011. (*Id.* at ¶46.) Plaintiff alleges that she did not receive any additional payments for work completed beyond August 2011. (*Id.* at ¶48.)

Plaintiff commenced this federal action against Defendants on July 1, 2003.  On August 23, 2013, the Ufemas filed a Motion to Transfer Venue Pursuant to Rule 12(b)(3) and/or to Dismiss Pursuant to Rule 12(b)(6) and supporting brief and exhibits.  (ECF Nos. 11 and 12.) Rich Coast also filed a Motion to Transfer Venue Pursuant to Rule 12(b)(3) and/or to Dismiss Pursuant to Rule 12(b)6) and supporting affidavit of Lance W. Ufema (ECF No. 13), in which Rich Coast incorporates by reference the arguments and authority cited by the Ufemas in their supporting brief.  Plaintiff filed a brief in opposition (ECF No. 17) on October 15, 2013.  The Ufemas filed a Reply Brief (ECF No. 18) on October 24, 2013.  Plaintiff requested and was granted permission to file a Sur-Reply (ECF No. 20), which she filed on October 28, 2013, along with two Exhibits (ECF  Nos. 21 & 22).

On October 29, 2013, the Court heard oral argument on the motions to transfer venue, and conducted an evidentiary hearing at which Plaintiff, Julie Ufema, and Jason Ufema testified. The Court ordered supplemental briefing on the motions to transfer venue upon the filing of the hearing transcript.  On October 30, 2013, the Court entered a text order directing the parties to brief the issue of whether, in the alternative, venue should be transferred to the Middle District of Pennsylvania pursuant to 28 U.S.C. §1404(a) in their supplemental briefs.  Thereafter, the

Ufemas and Plaintiff filed their respective supplemental briefs (ECF Nos. 25 & 26).  Rich Coast has not filed a supplemental brief.  As the motions to transfer venue have been fully briefed and argued, they are now ripe for disposition.

## II.   ANALYSIS

Defendants move to transfer venue to the Middle District of Pennsylvania based on improper venue under Federal Rule of Civil Procedure Rule 12(b)(3), on the basis that venue is improper in the Western District of Pennsylvania.  In support their motions, Defendants cite both 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a). They argue that under either of these statutes, venue is not proper in the Western District of Pennsylvania, as both require a determination that the court have personal jurisdiction over Defendants. Based on the personal jurisdiction requirement found in each statute, Defendants claim that the Middle District of Pennsylvania would be the only proper venue.

In Plaintiff's first brief in opposition to the motions to transfer, Plaintiff submits that six reasons exist for finding venue proper in this district:

(1)   The Defendants are amenable to personal jurisdiction in the Western District;

(2)   Plaintiff performed film editing work in the Western District;

(3)   Defendants paid Plaintiff in the Western District;

(4)   Defendants' tortious lawsuit was served in the Western District;

(5)   Defendants tortious lawsuit harmed Plaintiff in the Western District; and

(6)   Specific jurisdiction lies in the Western District.

Pl's Br. in Opp'n to Mots. to Transfer Venue and to Dismiss the Complaint under Rule 12(b)(6) at 5, ECF No. 17 ("Pl.'s 1ˢᵗ Br. in Opp'n").[4]   In essence, reasons (1) and (6) are the same, and reasons (2) through (5) go to whether specific personal jurisdiction exists here.

In this circuit, the party challenging venue has the burden of proving that venue in the selected judicial district is improper.  *Myers v. Am. Dental Ass'n,* 695 F.2d 716, 724 (3d Cir. 1982) (citation & footnote omitted); *see also Manning v. Flannery,* Civ. A. No. 09-3190, 2010 WL 55295, at *4 & n. 4 (E.D.Pa. Jan. 6, 2010) (citing *Myers, supra*) (other citations & footnote omitted).   In deciding a motion to dismiss and/or transfer for improper venue under Rule 12(b)(3), the Court must generally accept as true the allegations in the pleadings.  *Heft v. AAI Corp.*, 355 F.Supp. 2d 757, 762 (M.D.Pa. 2005) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *Myers,* 695 F.2d at 724) (footnote omitted).  In addition, "[t]he parties may submit affidavits in support of their positions, and may stipulate as to certain facts, but the plaintiff is entitled to rely on the allegations of the complaint absent evidentiary challenge." *Heft,* 355 F.Supp. 2d at 762 (citing *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 & n. 1 (3d Cir.1992); *Myers*, 695 F.2d at 724).  In either event, the Court is required to view the facts in the light most favorable to the Plaintiff.  *Id.*  (citing *Carteret* and *Myers, supra*).

Here, an evidentiary hearing was held to resolve factual challenges asserted by Defendants in their briefs.  Thus, Plaintiff is not entitled to rely solely on the allegations in her Complaint to defeat Defendants' motions to transfer/dismiss for improper venue.

---

[4] By "tortious lawsuit" Plaintiff is referring to the Replevin action filed by Defendants in the Mifflin County Court of Common Pleas in 2012, which is situated within the Middle District of Pennsylvania.  Plaintiff's abuse of civil process claim in the instant matter is predicated on the unsuccessful Replevin action filed by Defendants.

A.     **Findings of Fact from Evidentiary Hearing**

The Court makes the following findings of fact with regard to venue based on (1) the testimony and other evidence presented at the evidentiary hearing held on October 29, 2013 on the motions to transfer venue, and (2) the exhibits submitted by the parties in support of and in opposition to the  motions to transfer venue:

1.     As of October 29, 2013, Julie and Jason Ufema reside at 41 Meadowbrook Lane, Lewistown, Mifflin County, Pennsylvania, and have done so for the last two years.  Tr. at 30;[5] Affidavit of Lance "Jason" Ufema ("JU Aff.") at ¶2, Ex. D attached to Ufemas Br. in Supp. of Mot. to Transfer Venue (ECF No. 12-4).

2.     Prior to that, Julie Ufema resided in Shamokin Dam, Pennsylvania, located in Snyder County, for approximately two years.  Tr. at 30.

3.     Neither Mifflin County nor Snyder County is located in the Western District of Pennsylvania.

4.     Julie and Jason Ufema have never resided in Allegheny County or in any of the counties within the Western District of Pennsylvania.  Tr. at 31; JU Aff. ¶3.

5.     Neither Julie nor Jason Ufema owns any property in the Western District of Pennsylvania, either alone or jointly.  Tr. at 32; JU Aff. ¶3.

6.     Julie Ufema is employed as the bookkeeper for Rich Coast.  Tr. at 33.

7.     Julie Ufema does not maintain an office in the Western District of Pennsylvania. *Id.*

8.     Julie Ufema has not travelled to the Western District of Pennsylvania in connection with her work for Rich Coast.  *Id.*

---

[5] "Tr." refers to the transcript of the evidentiary hearing docketed at ECF No. 24.

9.      Group 13 Productions was Julie's project—it was a hobby.  Tr. at 33, 37; JU Aff. ¶4.

10.      Group 13 Productions is a fictitious name for a partnership of which Julie and Jason Ufema are the partners.  Tr. at 34, 82; JU Aff. ¶4.

11.      The registered address and principal place of business for Group 13 Productions is 41 Meadowbrook Lane, Lewistown, PA, which is the same address where Julie and Jason Ufema reside, and where Farkas stayed in August 2011 to October 12, 2011.  Tr. at 34-35, 83, 88; JU Aff. ¶¶6-8.

12.      The property located at 41 Meadowbrook Lane, Lewistown, PA, is owned by Lance W. Ufema, Sr., and is commonly referred to as the Rich Coast compound.  Tr. at 34, 84.

13.      The Ufemas' paying jobs are with Rich Coast.  Tr. at 35.

14.      The Ufemas reside and work on the same property where Rich Coast has its principal place of business—41 Meadowbrook Lane, Lewistown, Pennsylvania.  Tr. at 35; Aff. of Lance W. Ufema ("LU Aff.") at ¶2 (ECF No. 13-2).

15.      Rich Coast does not provide any funding for Group 13 Productions; Julie Ufema and Jason Ufema provide funding for Group 13 Productions.  Tr. at 35, 70.

16.      Group 13 Productions has never conducted business outside of Mifflin County, Pennsylvania.  Tr. at 35; JU Aff. ¶5.

17.      Group 13 Productions has never conducted business in the Western District of Pennsylvania.  Tr. at 35-36; JU Aff. ¶¶5, 9.

18.      Group 13 Productions is a film production company and has never made any films outside of Mifflin County, Pennsylvania.  Tr. at 36; JU Aff. ¶¶5, 11.

19.     Group 13 Productions does not own any property or maintain any offices in the Western District of Pennsylvania.  Tr. at 36; JU Aff. ¶9.

20.     In addition to *Caveat*, Group 13 Productions has produced three short films, none of which, including *Caveat*, was screened in the Western District of Pennsylvania. Tr. at 36-37; JU Aff. ¶16.

21.     Julie Ufema wrote, produced, and directed *Caveat*; she also handled the costumes and set design.  Tr. at 37-38.

22.     Julie Ufema has not traveled anywhere in the Western District of Pennsylvania in connection with *Caveat.*  Tr. at 40.

23.     Group 13 Productions does not engage in any type of e-commerce, does not derive any of its revenues from, nor has it sold any copies of *Caveat* or advertised *Caveat* for sale in any publication or other media in the Western District of Pennsylvania. Tr. at 37-38; JU Aff. ¶¶7, 18.

24.      Group 13 Productions' revenues from *Caveat* are approximately $80 as of October 29, 2013.  Tr. at 38.

25.     *Caveat* was filmed in the summer of 2011 entirely in Mifflin County, Pennsylvania.  Tr. at 38; JU Aff. ¶11.

26.     One of the production assistants on *Caveat* suggested to Julie Ufema that she consider Abbey Farkas as a potential candidate to help with the film editing.  Tr. at 39.

27.     In July of 2011, Julie Ufema invited Farkas to a group meeting at the Rich Coast compound to discuss the editing position on *Caveat*.  Tr. at 40, 97.

28.     During the interview for the film editor position, the Ufemas informed Farkas that she would have to reside in Lewistown in order to perform the editing work.  JU Aff.

8

¶13.

29.     At that time, Farkas was still living in State College, Pennsylvania, having recently graduated from Penn State.  Tr. at 40, 97.

30.     Julie Ufema testified that she told Farkas that she had $750 in the editing budget for *Caveat*.  Tr. at 40-41.

31.     Farkas testified that Julie Ufema offered her $750 a month for her editing services.  Tr. at 98.[6]

32.     Julie Ufema offered Farkas the editing position and Farkas accepted.  Tr. at 40-41, 97-98.

33.     The agreement between Julie Ufema and Farkas was not memorialized in a written document.  Tr. at 98.

34.     Immediately prior to commencing the editing work on *Caveat*, Farkas had completed an internship with the Altoona Curve minor league baseball team, in Altoona, Pennsylvania.  Tr. at 41, 97-98.

35.     During her internship with the Altoona Curve, Farkas resided in State College, Pennsylvania.  Tr. at 97-98, 116.

36.     As Farkas' lease on her apartment in State College was coming to an end, Julie Ufema offered to provide her with lodging at the Ufemas' house while performing her film editing work.  Tr. at 41, 98; JU Aff. ¶14.

37.     Farkas moved into the Ufemas' residence in Lewistown, PA in mid-August of 2011 and began editing *Caveat*.  Tr. at 41, 98; JU Aff. ¶15.

---

[6] The factual dispute as to the amount the parties agreed for Farkas' film editing services is not material to whether venue is proper in this district or should be transferred to the Middle District of Pennsylvania.

38.     It was important to the Ufemas that the film editing work be done at the Rich Coast compound in Lewistown because the work could be done much faster, and it was very convenient, particularly for holding staff meetings.  Tr. at 42; JU Aff. ¶14.

39.     Between August 15th and October 12th of 2011, Farkas made three trips to Pittsburgh—two of which were taken in observance of the Jewish holidays and the one was for a job interview.  Tr. at 117-119.

40.     While observing Rosh Hashanah and Yom Kippur, Farkas remained in Pittsburgh nine days and worked on average four to eight hours per day on *Caveat.*  Tr. at 117-120.

41.     Although Farkas performed some work while observing the Jewish holidays in Pittsburgh, she was not required to do so.  Tr. at 43, 122-123; JU Aff. ¶20.

42.     Any work that Farkas did in Pittsburgh prior to 10/21/11 was done by her own choosing, during trips to Pittsburgh for the Jewish holidays.  Tr. at 43, 122-123; JU Aff. ¶20.

43.     From mid-August until mid to late October, Farkas worked approximately forty hours per week.  Tr. at 106.

44.     Farkas' LinkedIn profile indicates that she performed editing services on *Caveat* for Group 13 Productions between August of 2011 and October of 2011 in Lewistown, PA.  Tr. at 114.

45.     Farkas' Facebook page as of 9/19/12 also indicates that she worked for Group 13 Productions in Lewistown between August and October of 2011.  Tr. at 115.

46.     Farkas left the Ufemas' residence on October 12, 2011 and began residing again with her family in Pittsburgh, PA.  Tr. at 88, 98-99; JU Aff. ¶15.

10

47. When Farkas left the Ufemas' residence, she had not completed the film editing, and due to impending deadlines, the Ufemas had two other editors work on editing the rest of the movie. Tr. at 44-45, 112, 127-28.

48. When Farkas saw the film *Caveat* in the beginning of December of 2011, she noticed that a few things had been changed. Tr. at 112.

49. Julie Ufema testified that she did not receive any additional editing work from Farkas after she left the Rich Coast compound on October 12, 2011. Tr. at 45, 48-49.

50. Julie Ufema testified that after October 12, 2011, she asked Farkas to send portions of the film to other persons to fix audio problems with the film, and to the other editors to complete the editing work, because Farkas possessed the hard drive containing the original digital footage of the film *Caveat* (hereinafter the "hard drive"). Tr. at 45, 49.

51. Farkas testified that she continued to work on *Caveat* after October 12, 2011 until early November of 2011, performing work on the trailer and, after that was finished, working on the credit sequence. Tr. at 120-21.

52. Farkas testified that she continued to receive emails from the Ufemas up until early November of 2011 about her work on *Caveat*, but the record shows that she only received two emails after October 12, 2011—one on 10/14/11 and the other on 11/9/11. Tr. at 120-21; Pl.'s Ex. A admitted at Evid. Hrg.; Ex. B attached to Pl.'s Supp. Br., ECF No. 26-2.

53. Farkas refused to return the hard drive to the Ufemas, and that was the alleged basis for a replevin action filed by the Ufemas against Farkas in the Court of Common Pleas of Mifflin County, Pennsylvania on July 10, 2012. Tr. at 46-47; Complaint in Civ. A. No. CP-44-CV-817-2012, Mifflin County Court of Common Pleas, ECF No. 1-5.

54. Farkas was living in Pittsburgh, PA at the time she was served with the

Replevin action.  Tr. at 106-07.

55.     Farkas experienced stress over the service of the Replevin action because she was not employed at the time and the complaint sought $35,000 in damages.  Tr. at 107.

56.     Julie Ufema sent and received emails regarding *Caveat* to/from Farkas on July 8, 26, 29, August 1, 17, September 6, 8, 9, 12, 14, 18, 19, 26, 28, October 3, 5, 6, 7, 8, 9, 11, 12, 13, 14, 2011, and November 9, 2011, using her Rich Coast email address during regular business hours. Tr. at 52-54; Pl.'s Exhibits A & B, admitted at Evidentiary Hearing on 10/29/13' Ex. B attached to Pl.'s Supp. Br., ECF No. 26-2.

57.     In the email sent on September 19, 2011 to Farkas, Julie Ufema forwarded an email from Jennifer Arnold at Rich Coast providing payroll information for Abbey Farkas, including her payroll address, social security number, marital status/number of exemptions, gross wages, and the amount of federal, state and other taxes withheld.  Pl.'s Ex. B admitted at Evid. Hrg.; Tr. at 103-04.

58.     Farkas was working in Lewistown when she received the 9/19/11 email. Tr. at 121.

59.     The $750 fee was paid to Farkas by a check drawn on the bank account of Group 13 Productions.  Tr. at 70, 126.

60.     Farkas received the $750 payment at her Pittsburgh address.  Tr. at 104.

61.     Farkas was paid the $750 for editing services provided to Group 13 Productions.  Tr. at 91.

62.     Farkas currently resides in Washington, D.C.  Tr. at 95.

63.     During the period July of 2011 through November of 2011, Farkas permanently resided at 5477 Bartlett Street, Pittsburgh, PA, which is also the address on her

driver's license, where she voted and paid taxes.  Tr. at 96.

64.    Julie and Jason Ufema have a home office located at 41 Meadowbrook Lane where they conduct their own business; Jason Ufema also conducts business for Rich Coast from that home office.  Tr. at 55.

65.    The insurance coverage for the release of *Caveat* was paid for by ticket revenues.  Tr. at 56.

66.    The only work on *Caveat* that Julie Ufema was aware of that Farkas did after she left 41 Meadowbrook Lane on October 12, 2011 was to send, at Julie Ufema's request, pieces of the film or scenes to other people that Group 13 Productions hired to fix the audio and finish the editing and other work on *Caveat*, which was necessitated by the fact that Farkas possessed the original hard drive.  Tr. at 62-63, 71-73.

67.    Group 13 Productions raised $4,200 for the *Caveat* movie through a kickstarter website, not the Rich Coast website, although the kick-off party was held at a Rich Coast store in Mifflin County.  Tr. at 66.

68.    The Rich Coast website temporarily contained a link on the bottom of the home page that said "Caveat merchandise" when the Ufemas first started promoting the movie. Tr. at 130, 134.

69.    Once the Ufemas had the resources to create their own Group 13 Productions store on the internet, they removed all of the *Caveat* products from the Rich Coast website and moved them to the Group 13 Productions website.  Tr. at 134.

70.    In addition to the Ufemas, two other employees of Rich Coast had some limited involvement with the film *Caveat*—Julie's mother-in-law, Jennifer Arnold, who provided some bookkeeping work, and Lance Ufema, who was the executive producer of *Caveat*.  Tr. at

69, 89-90.

71.    Rich Coast did not provide Group 13 Productions with any funding to make the movie *Caveat*.  Tr. at 35, 70.

72.    Julie and Jason Ufema used Rich Coast's computers when they were working on *Caveat,* but they personally purchased the hard drives.  Tr. at 83.

73.    Lance W. Ufema is the President of Rich Coast, which is a Pennsylvania Corporation with its principal place of business at 41 Meadowbrook Lane, Lewistown, PA, and has been located there since the corporation's inception.  LU Aff. at ¶2

74.    Rich Coast is engaged in the business of selling coffee and related products and was not involved with the creation of the film project known as *Caveat*.  LU Aff. at ¶3.

75.    Rich Coast does not own any property or maintain any business office in any county which is located in the Western District of Pennsylvania.  LU Aff. at ¶4.

76.    Rich Coast does not and has not ever traded or done business as Group 13 Productions.  LU Aff. at ¶7.

77.    Jason Ufema is the Treasurer and Vice-President of Operations of Rich Coast.  Tr. at 75.

78.    Since 2009, Jason Ufema has been a director of Extrava Market & Roasterie, a retail outlet for Rich Coast's coffees and teas.  Tr. at 76.

79.    As of October 29, 2013, Extrava Market & Roasterie has stores located in Lewistown, Pennsylvania, Selinsgrove, Pennsylvania—both in the eastern part of the state.  Tr. at 77.

80.    Extrava Market & Roasterie also had a store in Altoona, Pennsylvania

from February of 2012 until December 31, 2012.  *Id.*

81.    Jason Ufema secured the retail space for the Altoona store in April of 2011, but did not pay any rent until February of 2012.  Tr. at 89.

82.    With regard to the Altoona store, Jason Ufema started it up, created the menus, did the hiring and firing, the product purchases, did everything that a business owner should be doing; on occasion, he clerked there as well.  Tr. at 78, 89.

83.    Jennifer Arnold provided book keeping for the Altoona store.  Tr. at 89-90.

84.    Farkas observed Rich Coast products being sold at the visitor center at the Breezewood exit of the Pennsylvania Turnpike in Bedford County.  Tr. at 108.

85.    Rich Coast has distributorships in the Western District of Pennsylvania. Tr. at 133-34.

86.    Jason Ufema performs both personal and professional work out of his office on the Rich Coast compound.  Tr. at 79-80.

87.    Jason Ufema uses his Rich Coast email address for personal and business purposes.  Tr. at 78, 80.

88.    Jason used his Rich Coast email address to communicate with Farkas and others regarding the production of the film *Caveat*.  Tr. at 80.

89.    Consumers in the contiguous 48 states can purchase Rich Coast products through its interactive website which requires an email address and password to do so.  Tr. at 130-31.

90.    While it does maintain a website, Rich Coast does not advertise nor does it have any sales force soliciting business in the Western District of Pennsylvania.  LU Aff. ¶5.

91.     An email receipt from online@richcoast.com shows that Rich Coast products were purchased and shipped to Pittsburgh on one occasion.  Tr. at 131; Pl.'s Exhibit F to Evid. Hrg. on 10/29/13.

92.     Jason and Julie Ufema personally paid for the maintenance of the Group 13 Productions website.  Tr. at 132.

93.     Jason Ufema did not utilize any Rich Coast servers in building the Group 13 Productions website.  Tr. at 132.

94.     Farkas never received a check with Rich Coast Corporation's name on it. Tr. at 126-27.

95.     Farkas was not hired by, nor did she meet, Lance Ufema while working on *Caveat.*  Tr. at 124.

96.     Farkas was not engaged in any way in the sale of coffee or coffee-related products while working on *Caveat.*  Tr. at 128.

97.     Rich Coast never had any business relationship with Farkas.  LU Aff. ¶8.

98.     Rich Coast was not a party to the Replevin action cited in Plaintiff's Complaint.  LU Aff. at ¶9; Compl. in Civ. A. No. CP-44-CV-817-2012, Mifflin Cty. Ct. of Com. Pl., ECF No. 1-5.

## B.      Venue Under 28 U.S.C. § 1400(a) & §1391(b)(1)

In determining where venue is proper in a copyright infringement action, Defendants submit that the Court should look to 28 U.S.C. § 1400(a), which makes venue proper only in the Middle District of Pennsylvania.  Section 1400 provides in relevant part that:

> Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works

> or designs may be instituted in the district in which the defendant
> or his agent resides or may be found.

28 U.S.C. § 1400(a).  It is clear from the testimony at the hearing and the affidavit of Jason

Ufema that all of the Defendants reside in the Middle District of Pennsylvania for purposes of

Section 1400(a).  Both Julie Ufema and Jason Ufema testified that they permanently reside in

Lewistown, Mifflin County, Pennsylvania; that their partnership, Group 13 Productions, is a

registered fictitious name and has a registered address and its principal place of business in

Lewistown, Mifflin County, Pennsylvania   Lance Ufema attests that he is the President of Rich

Coast Corporation, which is registered as a Pennsylvania business corporation with a principal

place of business in Lewistown, Pennsylvania, and does not own or maintain any business office

in any county within the Western District of Pennsylvania.  Based on this evidence, Defendants

unequivocally reside in the Middle District of Pennsylvania.

Venue may also be established under Section 1400(a) if a defendant is "found" in the

forum.  For purposes of copyright venue, a defendant is "found" in any district in which

he/she/the corporation is amenable to personal jurisdiction.  *Testa v. Janssen,* 482 F.Supp. 1195,

1197 (W.D.Pa. 1980) ("if a non-resident corporation is amenable to process under the forum's

long-arm statute, in personam jurisdiction and venue are extant.") (citing *Time, Inc. v. Manning,*

366 F.2d 690, 696 (5th Cir. 1966)) (other citation omitted); *Nu Image, Inc. v. Does 1-23,322,* 799

F.Supp. 2d 34, 43 n. 3 (D.D.C. 2011) ("It is well established that §1400(a)'s 'may be found'

clause refers to a judicial district in which a defendant is subject to personal jurisdiction.") (citing

*Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co., Inc.*, 8 F.3d 441, 445-47 (7th Cir. 1993)).

Plaintiff argues that the language in this statute is not mandatory, but rather, permissive

allowing for the possibility of concurrent jurisdiction as in the instant matter.  Plaintiff does not

cite any authority for her position, and the authority appears to hold just the opposite, at least

where the only cause of action is for copyright infringement.  *See, e.g., Nu Image,* 799 F.Supp. 2d at 43 (noting that the "weight of authority strongly indicates that §1391(b) is inapplicable to [copyright infringement action]. . . . the Supreme Court held long ago that '[t]he venue of suits for infringement of copyright is not determined by the general provision governing suits in the federal district courts,' but rather by the specific copyright venue provision passed by Congress.") (quoting *Lumiere v. Mae Edna Wilder, Inc.,* 261 U.S. 174, 176 (1923)) (other citations omitted).  Plaintiff points out, however, that she is seeking relief for other federal and state claims which confer both federal question and diversity jurisdiction on this Court, distinguishing this case from the cited authority.

In any event, Plaintiff submits that Defendants' argument that venue is only proper in the Middle District of Pennsylvania under Section 1400(a) can only be true if Defendants are only amendable to personal jurisdiction in the Middle District.  Plaintiff maintains that a fair reading of her Complaint reveals multiple bases for venue/personal jurisdiction in the Western District of Pennsylvania.  Thus, Section 1400(a) requires an inquiry as to whether personal jurisdiction lies over the Defendants in this district.

In the alternative, Defendants argue that venue in the Western District is also improper under the general venue statute, 28 U.S.C. §1391(b).  Under the general venue statute, venue will lie over a civil action where one of the following circumstances is shown to exist:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).   In order to determine if venue is proper in the Western District of Pennsylvania under section 1391(b)(1), the Court is therefore required to determine the residency of the Defendants.

Section 1391(c)(1) provides the definition of residency for individuals and reads in pertinent part:

> For all venue purposes--
> (1) a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled.

28 U.S.C. § 1391(c)(1). Domicile refers to "[t]hat place where a man has his true, fixed and permanent home and principal establishment, and to which whenever he is absent, he has the intention of returning."  BLACK'S LAW DICTIONARY at 435 (5th ed. West 1979).  Thus, the test for establishing venue under Section 1391(b)(1) as to an individual defendant does not involve an inquiry into whether personal jurisdiction exists over the individual.  *See* 28 U.S.C. §1391(c). Based on the findings of fact above, it is clear and uncontroverted that Julie Ufema and Jason Ufema reside at 41 Meadowbrook Lane, Lewistown, Pennsylvania.   Accordingly, the Court concludes that Defendants Julie and Jason Ufema are domiciled in the Middle District of Pennsylvania. Thus, for purposes of Section 1391(b)(1), Defendants Julie and Jason Ufema are residents of Lewistown, Mifflin County, Pennsylvania, which makes venue proper as to them only in the Middle District of Pennsylvania.

Similar to Section 1400(a), the test for establishing venue under Section 1391(b)(1) against a corporate defendant requires an inquiry into whether personal jurisdiction exists over the corporation in the forum. *See* 28 U.S.C. §1391(d). Under the general venue statute, the definition for residency of a corporation in states with multiple districts, like Pennsylvania, can be found at 28 U.S.C. § 1391(d), which provides:

> **Residency of corporations in States with multiple districts.**--For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(d).  Therefore, to determine whether venue is proper in the Western District of Pennsylvania as to Rich Coast, Section 1391(d), as well as Section 1400(a), require that personal jurisdiction exist over Rich Coast in the forum.   In addition, venue in this district will lie against Julie Ufema and Jason Ufema only under Section 1400(a), and only if they can be "found" in this district, i.e., they are amenable to personal jurisdiction in the Western District of Pennsylvania.  Thus, the Court will examine the pleadings and evidence of record to determine whether Defendants are amenable to personal jurisdiction in this district.

C.   **Personal Jurisdiction**

In order for personal jurisdiction to exist over Defendants in the Western District of Pennsylvania, each Defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[7] *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)) (other citations omitted).  The minimum contacts requirement serves the purpose of "protect[ing] the defendant against the burdens of litigating in a distant and inconvenient forum" by requiring that the "defendant's conduct and connection with the forum State [be] such that [a defendant] should reasonably anticipate being haled into court there."

---

7.  The Due Process standard must be applied to each defendant.  *Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 145 n.6 (3d Cir. 1992) (citing *Calder v. Jones,* 465 U.S. 783, 790

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92, 297 (1980) (citations omitted).  This framework enables "potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 297.  Thus, a plaintiff cannot unilaterally create the necessary contacts between the defendant and the forum; rather, "minimum contacts" can arise only by "'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'"  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

Personal jurisdiction can exist in one of two forms: specific jurisdiction or general jurisdiction.  Specific jurisdiction applies where the cause of action is related to or arises from the defendant's contacts with the forum, *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 451 (3d Cir. 2003) (quoting *Pinker,* 292 F.3d at 368), while general jurisdiction applies where the defendant's contacts with the forum are "continuous and systematic" but are not related to the plaintiff's cause of action*, Pennzoil Prods. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 200 (3d Cir. 1998) (citation omitted).  In the instant matter, Plaintiff contends that both general and specific personal jurisdiction exists over Rich Coast, and that specific personal jurisdiction exists as to the Ufemas.

### 1.      General Personal Jurisdiction over Rich Coast

To establish a prima facie case of general personal jurisdiction over Rich Coast in the Western District, Plaintiff must now show that Rich Coast had "continuous and systematic" contacts with the Western District such that general personal jurisdiction exists.  The Court of Appeals has held that a plaintiff must prove significantly more than mere minimum contacts to

(1984)).

invoke the court's general jurisdiction. *Provident Nat'l Bank v. Cal Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987) (citations omitted). Thus, to satisfy due process, the contacts of a nonresident defendant with the form must be continuous and substantial. *Id.* (citations omitted). For example, continuous and substantial contacts were found to exist where the evidence of record showed that defendants transacted business in the forum "[b]y maintaining an office and an agent in [the forum] on an ongoing basis, entering into contractual relationships in [the forum], and designating and maintaining billing and technical contacts within [the forum]," thereby subjecting the non-resident defendants to the general jurisdiction of the forum district. *Twentieth Century Fox Film Corp. v. iCraveTV,* Nos. Civ.A. 00-121 and 00-120, 2000 WL 255989, * 4 (W.D.Pa. Feb.8, 2000) (citations omitted).

The evidence of record shows that Rich Coast is engaged in the business of selling coffee and related products and maintains its principal place of business in Lewistown, PA. The evidence further shows that Rich Coast was not a party to the Replevin action, does not have any business locations, own property or maintain any business office in any county within this district, nor does it or has it ever traded or done business as Group 13 Productions. Moreover, while Rich Coast maintains an interactive website where consumers in the 48 contiguous states can buy its products, it does not advertise nor does it have any sales force soliciting business in the Western District of Pennsylvania. Merely placing products for sale on a website for consumers to purchase does not provide sufficient contacts to establish general jurisdiction, where there is no evidence that Defendants targeted customers in the forum. *Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.,* 64 F.Supp. 2d 448, 451 (E.D.Pa. 1999).

On the other hand, the testimony established that Rich Coast does have distributorships in the Western District, although the actual number located in the Western District was not

provided,[8] and that its coffee products are sold at the visitor's center at the Breezewood exit on the Pennsylvania Turnpike.   Jason Ufema also acknowledged that an online receipt produced by Plaintiff at the evidentiary hearing indicated that a sale of Rich Coast's products had been made to a business in Pittsburgh, PA.   Moreover, the testimony showed that Rich Coast operated an Extrava Market & Roasterie store in Altoona, PA from February of 2012 to December 31, 2012,[9] and Jason Ufema, as Vice-President of Operations for Rich Coast and a Director of Extrava Market & Roasterie, was responsible for opening the Altoona store, creating the menus, hiring and firing employees, making product purchases, and occasionally clerked there.

Thus, viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Rich Coast's contacts with the Western District appear to be sufficiently continuous and substantial such that general personal jurisdiction exists over Rich Coast in this District. Nonetheless, as discussed below, the Court finds that venue should be transferred to the Middle District of Pennsylvania under 28 U.S.C. §1404(a).

To the extent Plaintiff attempts to argue that Jason Ufema is subject to general jurisdiction by virtue of his contacts with the forum while opening and overseeing the operation of the Altoona store, the Court finds no merit to that argument.   The evidence shows that Jason Ufema's contact with the Altoona store was limited to an eleven month period in 2012, and there is no evidence suggesting the frequency of his contacts with the Altoona store during that time period.   Accordingly, the Court finds that Plaintiff has not shown that Jason Ufema's contacts with the forum, while opening and operating the Altoona store, are continuous and substantial such that general jurisdiction exists over him in this District.

---

[8] The Court notes that on Rich Coast's website it states that it currently has 13 licensed distributorships along the Atlantic seaboard from Florida to New York. *See* http://www.richcoast.com/StaticPages/FAQ.aspx, last visited 2/4/14.

## 2.     Specific Personal Jurisdiction over Rich Coast and the Ufemas

Specific personal jurisdiction requires the Court to conduct a three-part test. *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). Initially, the court must determine whether the defendant has "'purposefully directed'" its activities toward the forum state. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984) (whether "minimum contacts" exist requires the court to examine "the relationship among the defendant, the forum, and the litigation."))). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Columbia, S.A.,* 466 U.S. 408, 414 (1984); *O'Connor v. Sandy Lane Hotel Co., Ltd.,* 496 F.3d 312, 317 (3d Cir. 2007)). Finally, if the plaintiff has established the first two elements, only then does the court proceed to the third part of the inquiry–whether the defendant's contacts with the forum state are such that maintenance of the action "'does not offend traditional notions of fair play and substantial justice.'"[10] *World-Wide Volkswagon,* 444 U.S. at 292 (citing *Int'l Shoe,* 326 U.S. at 316); *D'Jamoos,* 566 F.3d at 102.  In this regard, the court of appeals observed:

> The first two parts of the test determine whether a defendant has the requisite minimum contacts with the forum. The threshold requirement is that the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. [at 253]. To meet this requirement, the defendant's physical entrance into the forum is not necessary. *See Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184; *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476,

---

[9] However, the Altoona store was opened after the acts giving rise to this lawsuit occurred.

10.  With regard to the third prong of the specific jurisdiction analysis, the court should consider the following factors: "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King,* 471 U.S. at 477 (quoting *World-Wide Volkswagen,* 444 U.S. at 292).

> 482 (3d Cir.1993). A defendant's contacts, however, must amount
> to "a deliberate targeting of the forum." *O'Connor*, 496 F.3d at
> 317. The "unilateral activity of those who claim some relationship
> with a nonresident defendant" is insufficient. *Hanson*, 357 U.S. at
> 253.

*D'Jamoos,* 566 F.3d at 102-03. The inquiry under *D'Jamoos* must be applied to each claim and

to each defendant independently. *Marten v. Godwin,* 499 F.3d 290, 296 (3d Cir. 2007) (citing

*Remick v. Manfredy,* 238 F.3d 248, 255-56 (3d Cir. 2001)).

### a.    Rich Coast

Although the *D'Jamoos* inquiry must be applied to each claim separately, here the parties

have analyzed the contacts only with regard to Plaintiff's copyright infringement claims and

abuse of process claim. Therefore, the Court will examine Defendants' activities directed to the

forum as they relate to the copyright and abuse of process claims only.

Under the first prong of the specific jurisdiction test, Rich Coast must have purposefully

directed its activities at the forum. As discussed above in the general personal jurisdiction

analysis, the evidence shows that Rich Coast has purposefully directed business activities to the

Western District of Pennsylvania, through its distributorships and sales of products at the visitors

center in Breezewood and temporarily at its Altoona store. Therefore, it appears that the first

prong of *D'Jamoos* has been met as to Rich Coast.

Turning to second prong of the specific jurisdiction test—whether the litigation arises out

of or relates to at least one of the identified purposefully directed activities—the Court finds that

Plaintiff has failed to establish that either the copyright claims or abuse of process claim arise out

of any of Rich Coast's activities directed at the Western District of Pennsylvania. All of Rich

Coast's contacts directed at the forum relate to its sales of coffee products and the operation of a

roasterie. However, the copyright claims arise out of Rich Coast's alleged unlawful

reproduction, copying, distribution and/or display of Plaintiff's alleged copyright in her film editing on *Caveat*. The abuse of process claim arises out of the Replevin claim filed by Group 13 Productions in Mifflin County Court of Common Pleas, which was allegedly predicated on Plaintiff's possession of the hard drive containing the original movie footage of *Caveat*. Thus, there is simply no evidence to show or suggest that Rich Coast's alleged copyright infringement or abuse of process arose out of or was related to its coffee sales and/or distributorships in the Western District of Pennsylvania. Moreover, Rich Coast was not a party to the Replevin action, and therefore, that litigation cannot be said to have arisen out of any of Rich Coast's activities directed to the forum.

In addition, the Court finds no merit to Plaintiff's argument that the Ufemas' use of Rich Coast's email addresses, computers and/or offices to conduct Group 13 Productions' work on the film *Caveat* should be imputed to Rich Coast, and thus, establishes that this litigation arises out of such imputed activities. The Court takes judicial notice of the fact that it is a customary practice for employees to use their business emails and computers for both personal as well as business purposes, but merely using a work computer or email address does not implicate the employer's involvement in the employee's personal business, let alone that the employer purposefully directed the activity. Significantly here, the Ufemas live and work at the same location where Rich Coast has its principal place of business, thus necessitating some personal use of Rich Coast's computers/email. This, coupled with the overwhelming evidence that Group 13 Productions was a personal project/hobby of the Ufemas, which was funded 100% by them and sales of *Caveat* tickets and merchandise, supports the conclusion that Ufema's personal use of Rich Coast's computers/emails alone is insufficient to impute personal jurisdiction over Rich Coast in the Western District of Pennsylvania, especially where, as here, the Court finds that the

Ufemas' activities are insufficient to subject them to specific personal jurisdiction in this District. *See* Discussion, *infra,* at Section C.2.b.

In light of the above, the Court finds that Plaintiff has failed to establish the second prong of *D'Jamoos* as to Rich Coast.  Accordingly, specific personal jurisdiction does not exist as to Rich Coast in the Western District.

### b.    The Ufemas

To satisfy the first prong of *D'Jamoos,* Plaintiff must show that the Ufemas purposefully directed their activities to the Western District of Pennsylvania.

### i.    *Copyright Infringement*

To establish a prima facie claim of copyright infringement under 17 U.S.C. §501*,* the Plaintiff must show that she is the owner of a valid copyright in the subject work, and that Defendants copied the protectable elements of her work without her authorization. *Masquerade Novelty, Inc. v. Unique Indus., Inc.,* 912 F.2d 663, 667 (3d Cir. 1990) (citation omitted); *Winstead v. Jackson,* 509 F. App'x 139, 143 (3d Cir. 2013) (citing *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.,* 307 F.3d 197, 206 (3d Cir. 2002)).   In the instant matter, Plaintiff has claimed a valid copyright in her film editing work on *Caveat*, and has alleged that Defendants reproduced, copied, distributed and/or displayed her alleged copyrighted work without authorization.  Therefore, for purposes of the specific jurisdiction analysis, only those activities which are related to the unlawful reproduction, copying, distribution or display of Plaintiff's alleged copyrighted work can be considered in determining whether specific personal jurisdiction exists over the Ufemas.  Thus, the Court will consider whether the evidence shows any activities related to the production, reproduction, copying, distribution, or display of *Caveat* by the Ufemas were directed to the Western District.

The evidence shows that the entire filming of *Caveat* was completed in Lewistown, PA and the surrounding areas, all within Mifflin County, PA;  Farkas interviewed for the film editing position with the Ufemas in Lewistown; during the interview, Farkas was informed that she would have to reside in Lewistown in order to perform the editing work, and Farkas agreed to move to Lewistown in order to work on the project; the Ufemas provided Farkas with room and board at their home located in Lewistown, PA; Farkas resided at their home in Mifflin County, PA from August 2011 through October 2011; they never screened "*Caveat*" at any theatre or location in the Western District of PA; never shipped any copies of "*Caveat*" for sale to any individual, wholesaler or retailer in the Western District; and never advertised "*Caveat*" for sale in any publication or other media in Western District.

In opposition, Plaintiff points to a number of different acts by the Ufemas which she contends are sufficient to establish that they purposefully directed their activities to this forum. Initially, Farkas points to telephone communications and email correspondence sent between the parties.   However, the courts of this Circuit have found that an exchange of communication within the forum is, without more, insufficient for specific personal jurisdiction.  *See, e.g., Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.,* 75 F.3d 147, 152 (3d Cir. 1995); *Rotondo Weinreich Enters., Inc. v. Rock City Mechanical, Inc.,* Civ. A. No. 04-5285, 2005 WL 119571, *5 (E.D. Pa. Jan 19, 2005) (concluding that correspondence, e-mail and "numerous" telephone conversations with plaintiff in Pennsylvania were insufficient to demonstrate that defendant "purposefully availed itself of the privilege of conducting activities in Pennsylvania sufficient to subject it to the exercise of personal jurisdiction") (citing *Burger King,* 471 U.S. 476); *Novacare, Inc. v. Strategic Theracare Alliance*, Civ. A. No. 98-6205, 1999 WL 259848, *8 (E.D. Pa. April 30, 1999)(explaining that while phone calls and letters may be counted toward

the minimum contacts necessary for jurisdiction, they are insufficient when taken alone) (citing *Banyan Healthcare Servs, Inc. v. Laing*, Civ. A. No. 98-2004, 1998 WL 633991 (E.D. Pa. Aug. 20, 1998); *Harris v. Trans Union, LLC*, 197 F.Supp.2d 200, 201-02 (E.D. Pa. 2002); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993); *Lynch v. N.J. Auto. Full Ins. Underwriting Ass'n*, 762 F.Supp. 101, 104 (E.D. Pa. 1991)). *Cf. generally IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 n. 3 (3d Cir. 1998) (holding that "[t]he weight of authority among the courts of appeal is that minimal communication between the defendant and the plaintiff in the forum state, without more, will not subject the defendant to the jurisdiction of that state's court system") (citing cases therein).  Thus, merely sending emails which could be read by Plaintiff anywhere in the entire world does not show that the Ufemas directed their activities with regard to her film editing work on *Caveat* to the Western District.  Moreover, the evidence shows that Plaintiff received emails on only three dates after she left the Rich Coast compound—October 13, 14 and November 9, 2011.

Next, Plaintiff submits that she performed film editing work on *Caveat* in Pittsburgh as well as Lewistown, thus establishing sufficient contact with the Western District.  In particular, Farkas contends that she performed editing work in Pittsburgh over a nine-day period in late September and early October of 2011, and after leaving the Rich Coast compound on October 12, 2011 up to the beginning of November, 2011.  The evidence shows that Farkas agreed to move to Lewistown in order to perform film editing work on *Caveat* and was provided with a room at the Ufemas' residence in the Rich Coast compound.  At the evidentiary hearing, Plaintiff testified that while she was still living at the Rich Coast Coffee compound, she returned to Pittsburgh on three occasions—twice to observe the Jewish new year and holy day with her

family,[11] which consisted of approximately nine days, and once for a job interview which lasted one day.  She further testified that she performed work during the first two visits, on average four to eight hours each day.   Julie Ufema testified that the taking of any editing work by Farkas to her parents' home in Pittsburgh during these visits was not required by her or Jason Ufema, and was done purely on Farkas' own initiative.   This is supported by Farkas' testimony that she was not required to work in Pittsburgh, but that she did so in order to meet editing deadlines while also being able to observe a religious holiday and holy day.   Based on these facts, the Court concludes that any editing work performed by Farkas in Pittsburgh prior to October 12, 2011 was not required, and Farkas unilaterally made the decision to work from Pittsburgh. As such, specific jurisdiction cannot be based upon unilateral acts.   Thus, Farkas' limited performance of editing work on her own initiative over a nine-day period does not show that the *Ufemas* purposefully directed their film production activities at the Western District.

In addition, Plaintiff testified that after she left the Rich Coast compound on October 12, 2011, she returned to Pittsburgh where she worked on the trailer for the film and after that, worked on the credit sequence.  The emails exchanged between Farkas and the Ufemas between October 11 and 14, 2011 appear to partially support Plaintiff's testimony.  The emails show that Farkas did work on the trailer and credit sequence, but some of this work was performed *before* she left the Rich Coast compound on October 12, 2011;[12] after that date, the emails suggest Farkas may have performed some work on the trailer on October 13th and/or October 14th.[13]  The

---

[11] The Court takes judicial notice of the fact that in 2011, the first day of Rosh Hashanah fell on September 29, 2011, and Yom Kippur fell on October 8, 2011.

[12] In the October 11, 2011 emails, Julie Ufema inquired about the status of Farkas' work on the trailer and Farkas responded about her progress.  In the emails exchanged on October 12, 2011, Julie Ufema again inquired about the status of the trailer and indicated she needed the trailer done ASAP, and also discussed work on the opening and closing credits.

[13] In the October 13th emails, Julie Ufema informed Farkas of a change she wanted made to the

only other email post-October 12th produced by Plaintiff is from Julie Ufema dated 11/9/11, in which she asked Farkas and a third person for comments on a problem trying to open the "reel file," and Julie told Farkas she would get back to her with regard to the music. *See* Ex. B to Pl.'s Supp. Br., ECF No. 26-2.

Julie Ufema testified, and there is no evidence to refute, that she did not receive any additional editing work from Farkas after 10/12/11.  Indeed, Farkas admitted that the Ufemas had two other editors working on film editing after she left the Rich Coast compound, and noticed that a few things had changed when she saw the film at the screening in December of 2011. After 10/12/11, Julie Ufema asked Farkas to send portions of the film to other persons to fix audio problems and to the other editors to complete the editing work.   Plaintiff also testified that after 10/12/11, she provided her opinion on the other editors' work, but the emails after October 12th produced by Plaintiff do not show that she was providing comments on the other editor's work.

Based on the above evidence, the Court finds that the nature and quality of the work performed by Farkas after her departure from the compound on 10/12/11 was insubstantial. Accordingly, the Court concludes that Plaintiff's contacts with the Ufemas after 10/12/11 do not show that the Ufemas purposefully directed their film production activities at the Western District.

The next activity that Plaintiff submits gives rise to specific jurisdiction is the Ufemas' remittance of a single payment for film editing work to Farkas at her permanent address in Pittsburgh, PA.  At the evidentiary hearing, Plaintiff testified that Group 13 Productions was the

---

trailer, which Farkas acknowledged.  In the October 14th email exchange, Farkas sent Julie Ufema a YouTube link to solve Ufema's earlier concern and apologized for her lack of progess. Julie approved the change and asked Farkas to upload the trailer to her Vimeo account ASAP

Payor on the check she received at the Bartlett Street address.  The Court finds that remitting payment to an address in the Western District of Pennsylvania does not show that the Ufemas directed their film production activities to the Western District of Pennsylvania.  Rather, the record shows that the Ufemas' film producing activities were directed at the Middle District of Pennsylvania and the fact that Plaintiff asked that her paycheck be mailed to an address in Pittsburgh is insufficient alone to establish specific jurisdiction over the Ufemas.  *Hampton-Meridian Group, Inc. v. Venturella,* Civ. A. No. 2:07-cv-1176, 2008 WL 2446697, *6 (W.D.Pa. June 16, 2008) ("'It is well settled that a single payment alone is not sufficient to subject a defendant to personal jurisdiction.'") (quoting *Times Share Vacation Club v. Atlantic Resorts Ltd.*, 735 F.2d 61, 65 & 66 n. 7 (3d Cir.1984) ('emphasizing that '[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State ... it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protection of its laws' and rejecting the contention that payment by check by a defendant could in itself confer jurisdiction")).  Group 13 Productions mailed one paycheck to Pittsburgh at Plaintiff's request—that hardly establishes that the Ufemas directed Plaintiff to perform work in this District, nor is it alone sufficient to show that the Ufemas purposefully directed their business activities at the forum.  Instead, it is but one of the pieces of evidence to be considered under a minimum contacts analysis.  *Id.*

Related to this last argument is Plaintiff's supposition that because she maintained a permanent address in Pittsburgh, paid taxes and voted in Pittsburgh, and listed the Pittsburgh address on her driver's license, these facts show that the Ufemas transacted business with

---

and to add Group 13 Productions logo to the beginning.

Plaintiff in Pittsburgh.  Plaintiff's argument misses the mark.  None of these factors have any bearing whether the *Ufemas* purposefully directed their film production activities to the Western District.  And, in any event, Plaintiff agreed to perform the film editing work in Lewistown.

Next, Plaintiff attempts to bootstrap the general jurisdiction conferred on Rich Coast onto the Ufemas, by arguing that the joint and several liability of the Defendants provides a basis for personal jurisdiction over the Ufemas, citing for support, *Donner v. Tams-Witmark Music Libarary, Inc.,* 480 F.Supp. 1229 (E.D.Pa. 1979).  (Pl.'s Supp. Br. at 2-4, ECF No. 26.)  Initially, the district court in *Donner* acknowledged the general rule that "the courts have declined to exercise personal jurisdiction over individuals for their acts done in a corporate capacity." *Id.* at 1233 (citations omitted).  In *Donner,* the plaintiff brought a claim for copyright infringement and alleged that the president of the corporate defendant had personally committed tortious acts constituting the alleged infringement.  Because the copyright infringement claims were predominantly tortious in nature, the *Donner* court applied the Third Circuit rule of joint tortfeasor liability of corporate officers,[14] and concluded that because the "allegedly tortious acts and omissions of the corporate [defendant] are alleged to have been committed personally by [the corporate officer], acting in his corporate capacity", . . . if [the corporate defendant] is ultimately found liable for copyright infringement, . . . [the corporate officer] will . . . be subject to personal liability as a joint torfeasor." *Id.* at 1233-34.  The district court then concluded that the [corporate officer's] allegedly tortious conduct in his capacity as president of [the corporate

---

[14] "The Third Circuit has held that corporate officers are personally liable for alleged tortious conduct of the corporation if they personally took part in the commission of the tort, or if they specifically directed other officers, agents or employees of the corporation to commit the act." *Donner,* 480 F.Supp. at 1233 (citing *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978); *Zubik v. Zubik*, 384 F.2d 267, 275 (3d Cir. 1967)).

defendant] may be considered to determine whether the court has jurisdiction over him as an individual defendant. *Id.* at 1234.

*Donner* has been rejected by a number of other district courts in this Circuit, questioning whether that approach withstands constitutional muster on the premise that it may be "fundamentally unfair to force corporate officers to defend suits in their individual capacity based on their participation in corporate activities in a forum." *See, e.g., Rittenhouse & Lee v. Dollars & Sense, Inc.,* No. 83-5996, 1987 WL 9665, *4 (E.D.Pa. Apr. 15, 1987) (citing *Simpkins Corp. v. Gourmet Res. Int'l,* 601 F.Supp. 1336, 1343-45 (E.D.Pa. 1985); *PSC Prof'l Serv. Group., Inc. v. Am. Digital Sys.,* 555 F.Supp. 788, 792-94 (E.D.Pa. 1983)). *See also United States v. Geri-Care, Inc.,* Civ. A. No. 89-5720, 1990 WL 39301, *3 (E.D.Pa. Mar. 30, 1990) (discussing approaches by various district courts post-*Donner* and rejecting *Donner* in favor of approach adopted by district court in *Rittenhouse & Lee*); *Neyer, Tiseo & Hindo, Ltd. v. Russell,* Civ. A. No. 92-2983, 1993 WL 52552, *4-*5 (E.D.Pa. Feb. 25, 1993) (also rejecting *Donner* approach and applying approach delineated in *Rittenhouse & Lee*).

In *Rittenhouse & Lee,* the court followed the approach taken by Judge VanArtsdalen in *Moran v. Metro. Dist. council of Phila. & Vicinity,* 640 F.Supp. 430 (E.D.Pa. 1986), who, after reviewing the conflicting approaches, declined to apply a hard and fast rule and concluded that "consideration of an individual's corporate contacts for jurisdictional purposes may be appropriate under certain circumstances." *Rittenhouse & Lee*, 1987 WL 9665 at *4 (footnote omitted). Although Judge VanArtsdalen in *Moran* did not list any specific circumstances that should be considered, the district court in *Rittenhouse & Lee* identified three circumstances that it found to be relevant in determining whether personal jurisdiction can be exercised over a corporate officer for acts performed in such capacity: (1) "the extent and nature of a corporate

officer's personal participation in the tortious conduct;" (2) "the nature and quality of the officer's forum contacts; and" (3) "the officer's role in the corporate structure."  1987 WL 9665, at *4 n. 6. This flexible due process inquiry, the *Rittenhouse & Lee* court noted, comports with the Supreme Court's decision in *Keeton,* where the Court held that jurisdiction over an employee does not automatically follow merely from the fact that personal jurisdiction exists over the corporation, but rather, "[e]ach defendant's contacts with the forum . . . must be assessed individually."  465 U.S. at 781 n. 13 (citations omitted).  Nonetheless, the Supreme Court "reject[ed] the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity."  *Id.*

When the three factors identified in *Rittenhouse & Lee* are applied to the case at bar, the Court concludes that the Ufemas' positions with Rich Coast do not provide a basis for exercising personal jurisdiction over them.  Only the third factor weighs in favor of considering Jason Ufema's contacts with the Western District in his capacity as a corporate officer and director of Rich  Coast and Extrava Market & Roasterie, respectively, in deciding whether he is subject to specific jurisdiction in the forum.  As to the other factors, as noted above, Jason's contacts with the Western District in his official capacity as a corporate officer/director were limited to starting up and overseeing the operation of the Altoona store over an eleven-month period in 2012. Jason further testified that he clerked at the Altoona store on occasion, but there is no evidence to show the frequency of those visits.  While these contacts with the Western District are undeniably business related, they were for the purpose of selling Rich Coast's coffee products, and therefore, are not the type of contacts envisioned by the first two factors delineated in *Rittenhouse & Lee.*  Thus, the Court need not consider Jason's corporate contacts in determining whether this Court may exercise specific personal jurisdiction over him.  As to Julie Ufema,

none of the three factors in *Rittenhouse & Lee* weighs in favor of considering her contacts with the Western District in her capacity as an employee of Rich Coast.   With regard to Julie, the evidence shows that she is not a corporate officer or director of either company, and that she did not have any contacts with the Western District in performing bookkeeping duties for Rich Coast.

Accordingly, because none of the above activities proffered by Plaintiff, either alone or together, establishes that the Ufemas purposefully directed their activities at the Western District, Plaintiff has failed to establish the first prong of *D'Jamoos*.

Turning to the second prong of *D'Jamoos*, the Court concludes that because none of the Ufemas' activities identified by Plaintiff constitute purposefully directed contacts with the forum, it is of no moment then whether the litigation arose out of or relates to one of the activities relied on by Plaintiff to establish specific personal jurisdiction.   This litigation arises out of the filing of the Replevin action in Mifflin County, and the filming, editing and producing of *Caveat* which was done almost exclusively in the Middle District of Pennsylvania, the only exception being Plaintiff's self-imposed editing on two occasions while visiting her family in Pittsburgh.   The oral agreement between the Plaintiff and Defendants was formed in Lewistown, where she interviewed for the position and agreed to perform the editing work in Lewistown, and Defendants agreed to provide lodging for her there.   Plaintiff is therefore unable to meet the second prong of the specific personal jurisdiction test as to the Ufemas.

### ii.       *Abuse of Process Claim*

Next, Plaintiff argues that the Ufemas' actions with regard to the Replevin action provide this Court with personal jurisdiction over them with regard to her abuse of process claim.   Plaintiff's argument is two-fold.   First, Plaintiff submits that act of serving her with process in

the Western District of Pennsylvania for the Replevin action filed by Group 13 Productions in the Mifflin County Court of Common Pleas provides sufficient contact with the forum. Second, Plaintiff submits that she was tortiously harmed in the Western District by the Replevin action filed by Group 13 Productions, as the demand for $35,000 in damages caused her emotional distress. The Replevin action and the alleged resulting tortious harm form the basis of Plaintiff's common law abuse of process claim in the case at bar. The Court does not find any merit to either argument.

In Pennsylvania, to establish a common law claim for abuse of process, the plaintiff must demonstrate that the defendant: "'(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff.'" *Harris v. Brill,* 844 A.2d 567, 572 (Pa. Super. Ct. 2004) (quoting *Werner v. Plater-Zyberk,* 799 A.2d 776, 785 (Pa. Super. Ct. 2002)). The superior court in *Werner* further opined that "[a]buse of process is, in essence, the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process. Thus, the gravamen of this tort is the perversion of legal process to benefit someone in achieving a purpose which is not an authorized goal of the procedure in question." *Werner,* 799 A.2d 785; *Harris,* 844 A.2d at 572 (quoting *Werner, supra*); *see also Gen. Refractories Co. v. Fireman's Fund Ins. Co.,* 337 F.3d 297, 304 (3d Cir. 2003) ("The Supreme Court of Pennsylvania has said that '[t]he gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it.'") (quoting *McGee v. Feege,* 535 A.2d 1020, 1023 (Pa. 1987)) (other citations omitted). Based on the above authority, the superior court in *Harris* determined that the *commencement* of the underlying RICO litigation in Crawford County was sufficient to lay venue in Crawford County over plaintiff's abuse of process claim. *Harris,* 844 A.2d at 572.

As to her first argument, Farkas testified that she was tortiously harmed when she was served with process at her Pittsburgh residence.  However, the act of *serving* process is not an element of an abuse of process claim in Pennsylvania, and, in any event, under *Harris,* the act of *serving* process did not cause the alleged tortious harm, but rather, any such harm could only result from the filing of the Replevin action, which occurred in Mifflin County Court of Common Pleas.  Further, in order to be served with process in Pennsylvania, the Plaintiff need not have been physically present at the address in Pittsburgh. PA. R.CIV.P. 402(a)(2). As such, the act of serving process of the Replevin action on Plaintiff in the Western District is not sufficient to show that Group 13 Productions purposefully directed the Replevin action at the Western District of Pennsylvania.

As to her second argument, Farkas contends that because the Ufemas' actions vis a vis the Replevin action caused her tortious harm in the Western District, that is sufficient to confer specific jurisdiction over the Ufemas in this forum.  In support, Plaintiff cites *Emert v. Larami Corp.,* 200 A.2d 901 (Pa. 1964), for the proposition that the place of the wrong is where the injury is inflicted.  Plaintiff submits that based on *Emert,* since the injury was inflicted on Plaintiff in the Western District, as that is where she was residing when she was served with process and suffered emotional distress, venue is proper in this District.   Plaintiff's reliance on *Emert* is misplaced, as that case is distinguishable factually from the case at bar,[15] and in any

---

[15] *Emert* involved a personal injury action arising from the use of an allegedly defective slingshot.  The issue before the court was the validity of the deputized service of a writ of summons under former Pennsylvania Rule of Civil Procedure 1043, which set forth the procedure for obtaining service of process against an individual when an action is commenced in the county where the cause of action arose.  200 A.2d at 902.  The court construed the phrase "where the cause of action arose" to mean in the county where the tort was committed by the infliction of injury, *id.*, but it did so in the context of personal service, not venue.  *See Peters v. Sidorov,* 855 A.2d 894, 899 (Pa. Super. Ct. 2004).

event, federal law on venue governs the dispute here, not Pennsylvania law. *Synthes, Inc. v. Emerge Med., Inc.,* 887 F.Supp. 2d 598, 609 n. 5 (E.D.Pa. 2012) (venue issues are procedural in nature and therefore federal law governs); *Wozniak v. Johnston,* Civ. A. No. 09-238, 2009 WL 1307459, *3 (W.D.Pa. May 8, 2009) (federal law governs propriety of venue in federal district court). Specifically, Plaintiff's argument appears to raise a question of personal jurisdiction under the *Calder*[16] effects test, however, she has failed to cite *Calder* or provide any analysis of the facts of this case under the effects test.

The U.S. Court of Appeals for the Third Circuit has determined that a plaintiff may establish personal jurisdiction under *Calder* if he or she demonstrates:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Marten,* 499 F.3d at 297 (quoting *IMO Indus.*, 155 F.3d at 265–66) (internal quotation marks omitted). The *Marten* court further explained:

---

[16] In *Calder v. Jones,* 465 U.S. 83 (1984), the Supreme Court was asked to decide whether a California district court had specific jurisdiction over defendants, who were Florida residents, over a claim brought by an entertainer, who was a California resident, because of an article published by the National Inquirer, based on the effects of their Florida actions felt by the plaintiff in California. The Court found that the Florida defendants expressly aimed their intentional, tortious activity at California because "they knew [the article] would have a potentially devastating impact upon [the California plaintiff]. And they knew that the brunt of that injury would be felt by [the California plaintiff] in the State in which she lives and works and in which the National Inquirer has its largest circulation." *Id.* at 789-90. As such, the Supreme Court concluded that the Florida defendants could "reasonably anticipate being haled into court" in California. *Id.* at 790 (citing *World-Wide Volkswagen*, 444 U.S. at 297) (other citations omitted).

[T]he effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state. *See, e.g., Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 455 n. 6 (3d Cir.2003) (indicating the effects test is an alternative to "minimum contacts" analysis but declaring they both require a similar type of "intentionality" on the part of the defendant). Even if a defendant's conduct could cause foreseeable harm in a given state, such conduct does not necessarily give rise to personal jurisdiction in that state. "[T]he foreseeability that is critical to due process analysis is ... that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559.

*Id.* In applying the *Calder* effects test, the court of appeals has instructed that a district need not consider the first two elements unless the "expressly aimed" element is first met. *Id.* (citing *IMO Indus.,* 155 F.3d at 266). To demonstrate that the defendant "expressly aimed" his or her tortious conduct at the forum, the plaintiff must show that

"the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." [*IMO Indus.,* 155 F.3d] at 266. If a plaintiff fails to show that the defendant "'manifest[ed] behavior intentionally targeted at and focused on' the forum," *IMO Indus.,* 155 F.3d at 265 (quoting *ESAB Group Inc. v. Centricut, Inc.,* 126 F.3d 617, 625 (4th Cir.1997)), the plaintiff fails to establish jurisdiction under the effects test.

*Marten,* 499 F.3d at 298. Finally, the *Marten* court observed that under *Calder,* "the state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants. Jurisdiction is proper when the state of a plaintiff's resident is 'the focus of the activities of the defendant out of which the suit arises." *Id.* (quoting *Keeton,* 465 U.S. at 780).

Farkas relies on the fact that at the time the Replevin action was commenced in Mifflin County, she resided in the Western District of Pennsylvania, and therefore felt the brunt of the harm there. However, this argument ignores the fact that in order to establish personal

jurisdiction under *Calder,* the plaintiff must also show that Defendants *knew* that she would suffer the harm there and that they *expressly aimed* their tortious conduct at that forum. *Marten,* 499 F.3d at 299. Inasmuch as a defendant can be found liable for abuse of process without "expressly aiming" his or her conduct at the plaintiff's location, or even knowing where the plaintiff would be likely to suffer harm, *Harris,* 844 A.2d at 572, a plaintiff does not meet the effects test by merely demonstrating that she resided in the forum at the time of the conduct giving rise to the abuse of process claim. *Marten,* 499 U.S. at 299.

Plaintiff has failed to point to any allegations in her Complaint or to any testimony or documents presented at the evidentiary hearing to show that the Ufemas "manifested behavior intentionally targeted at and focused on" the Western District. Moreover, based on her Complaint, it is questionable whether Plaintiff has even shown that she felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harms suffered by her as a result of the Replevin action, as Plaintiff no longer resides in the Western District. As such, Plaintiff has failed to establish specific jurisdiction over the Ufemas under the *Calder* effects test.

In summary, the Court finds that Plaintiff has failed to establish that the Ufemas and Rich Coast are amenable to specific personal jurisdiction in the Western District.[17] Rather, the evidence demonstrates that specific personal jurisdiction over the Ufemas and Rich Coast can only be established in the Middle District of Pennsylvania.

### D.      VENUE UNDER 28 U.S.C. §1391(b)(2)

In the alternative, Plaintiff submits that Section 1391(b)(2) provides venue over the Ufemas and Rich Coast. The Court does not find any merit to this argument. Section

---

[17] Because Plaintiff has not established the first and second prongs of the specific personal

1391(b)(2) requires that a substantial portion of the events or omissions giving rise to Plaintiff's claims must have occurred in the Western District. The evidence shows that Farkas interviewed for the film editing position in Lewistown, the oral agreement was formed in Lewistown, Farkas resided at the Ufemas' residence in the Rich Coast compound while performing the editing work, meetings concerning the film were scheduled there, and she performed a substantial portion of the editing work in Lewistown.   She also was required to work weekends in Lewistown.   Again, while Plaintiff did perform some of the editing work in Pittsburgh while observing a religious holiday and holy day, that work was completed on her on initiative and thus constituted a unilateral activity.   After 10/12/11, the Ufemas did not receive any film editing from Farkas, and any follow up tasks completed by Farkas were minimal and insubstantial.   Similarly, a substantial portion of the events giving rise to Plaintiff's abuse of process claim occurred in Mifflin County, as that is where the Replevin action was brought. Based on the evidence, the Court finds that Plaintiff has failed to show that a substantial portion of the events or omissions giving rise to her claims against the Ufemas occurred in the Western District.   As to Rich Coast, the record shows that none of the events or omissions, let alone a substantial portion thereof, giving rise to her claims against Rich Coast occurred in this District.   Quite simply, it is clear that Plaintiff's claims against Rich Coast do not arise out of its business dealings/distributorships in the Western District. Therefore, the Court concludes that venue does not lie over the Ufemas and Rich Coast under 28 U.S. §1391(b)(2) in this District.[18]

### E.    TRANSFER OF VENUE UNDER 28 U.S.C. §1404(a)

Even though this Court has determined that venue is properly laid in this district as to

---

jurisdiction test, the Court does not reach the third prong of the test.

[18] Section 1391(b)(3) is not applicable here, as it appears from the facts that venue would be proper in the Middle District of Pennsylvania as to all Defendants.

Rich Coast, the Court further concludes that discretionary transfer of the action against Rich Coast is warranted under 28 U.S.C. §1404(a).

Federal Rule of Civil Procedure 19(a)(3) provides that "[i]f a joined party objects to venue and the joinder would make venue improper, the court  must dismiss that party."  Here the Court has determined that venue in the Western District is improper as to the Ufemas, and therefore, Plaintiff will have to proceed with her claims against the Ufemas, if she chooses to do so, in the Middle District.  Thus, if the Court denies Rich Coast's motion to transfer venue, the resulting effect would be concurrent dual actions proceeding in two different districts involving the same claims and same Plaintiff.  However, if venue as to all parties would be proper in the Middle District, and the requirements for transfer of venue under 28 U.S.C. §1404(a) weigh in favor of transfer, then such duplicity of costs and resources can be avoided.

Consequently, after the evidentiary hearing on Defendants' motions to transfer venue, it became clear to the Court that if the evidence showed that general personal jurisdiction existed over Rich Coast in the Western District, the Court should consider whether transfer of venue to the Middle District would be appropriate pursuant to 28 U.S.C. §1404(a).  "The purpose of transferring venue under § 1404(a) 'is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Stillwagon v. Innsbrok Golf & Marina, LLC*, Civ. A. No. 2:11-cv-1338, 2013 WL 1180312, at *24 (W.D.Pa. Mar. 20, 2013) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). Therefore, on October 30, 2013, the Court directed the parties to provide supplemental briefing on the issue of whether, in the alternative, venue should be transferred to the Middle District of Pennsylvania pursuant to 28 U.S.C. §1404(a), which allows a district court to transfer any civil action to any other district or division where it might have been brought "[f]or the convenience

of the parties and witnesses, [and] in the interest of justice[.]"

The district court is vested with broad discretion in determining whether transfer of venue is appropriate. *Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 756 (3d Cir. 1973) (citations omitted); *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 883 (3d Cir. 1995). In considering a motion to transfer venue under §1404(a), the court applies a two-part inquiry. *Mitel Networks Corp. v. Facebook, Inc.*, 943 F.Supp. 2d 463, 467 (D.Del. 2013). First, the court must determine whether the action could have been brought originally in the transferee forum, that is, whether venue in the transferee district is proper. *Id.; Stillwagon,* 2013 WL 1180312, at *24 (citations omitted). Second, the court must apply the balancing test set forth in *Jumara,* which requires the weighing of a number of public and private interests to determine whether the transferee forum "would best serve the convenience of the parties and witnesses as well as the interests of justice." *Mitel Networks,* 943 F.Supp. 2d at 467 (citing *Smart Audio Techs., LLC v. Apple, Inc.,* 910 F.Supp. 2d 718, 723-24 (D.Del. 2012)). The moving party bears the burden of demonstrating that transfer of venue is appropriate at each step of the inquiry. *Id.* (citing *Jumara,* 55 F.3d at 879-80).

It is clear, and the parties do not dispute, that this action could have been brought originally in the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(b)(1), as all of the Defendants reside in that district. Therefore, Defendants have met their burden under the first prong.

Next, the Court must consider the factors delineated by the court of appeals in *Jumara*:

> In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of

justice be better served by transfer to a different forum." 15 Wright, Miller & Cooper § 3847. While there is no definitive formula or list of the factors to consider, see 1A Pt. 2 Moore's ¶ 0.345[5], at 4363, courts have considered many variants of the private and public interests protected by the language of § 1404(a).

The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

55 F.3d at 879-80 (internal citations omitted).

## 1.     **The Private Interests**

Ordinarily, courts will defer to the plaintiff's choice of forum, *Jumara,* 55 F.3d at 880,

especially where the plaintiff's choice is her home forum, *Stillwagon,* 2013 WL 1180312 at *26

(citing *Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co.*. 524 F.Supp. 2d 628, 631 (W.D.Pa.

2006)).   However, plaintiff's choice of forum is given less weight where "few, if any, of the

operative facts took place in [that] forum . . . and the defendant has indicated strong preference

for another district."   *Gallant v. Trustees of Columbia Univ. in the City of New York*, 111

F.Supp.2d 638, 647 (E.D. Pa. 2000)(citing *Nat'l Mortg. Network v. Home Equity Ctr.*, 683

F.Supp. 116, 119 (E.D. Pa. 1988)); *see also Stillwagon,* 2013 WL 1180312 at *26 n. 37 (citation

omitted).   At the time Plaintiff commenced this action, she did not reside in either the Western

District or Middle District of Pennsylvania.  In addition, almost all of the operative facts giving rise to her claims occurred in the Middle District of Pennsylvania.  Thus, this factor is neutral.

Defendants prefer that this action proceed in the Middle District of Pennsylvania, where they reside, and where personal jurisdiction exists over all of them.  This factor weighs in favor of transfer.

In addition, a substantial portion of the acts giving rise to Plaintiff's claims occurred in the Middle District.  The federal copyright claim, Wage and Hour claims under Pennsylvania and federal law, and Fair Labor Standards Act claim are all derived from the oral agreement between the Ufemas and Farkas for the performance of film editing services on *Caveat*.  That agreement was entered into in Lewistown, Pennsylvania, was performed almost entirely in Lewistown, any breach, if any, of that agreement, occurred in Lewistown when the Ufemas allegedly failed to pay the money Farkas claims she was owed for her performance under the oral agreement.  The abuse of process claim is predicated on the commencement of the Replevin action in Mifflin County by the Ufemas to recover the original hard drive that Plaintiff possessed.  This factor also weighs in favor of transfer.

Next, the convenience of the parties also favors transfer.  The only person who resides in the Western District is Plaintiff's counsel.  Plaintiff currently resides in Washington, D.C.  The Court takes judicial notice of the fact that the driving distance between Washington, D.C. and the federal courthouse in Harrisburg is significantly shorter than between Washington, D.C. and Pittsburgh, PA.  On the other hand, all of the Defendants and counsel for Rich Coast reside in the Middle District of Pennsylvania.

The convenience of the witnesses has been considered a "particularly significant factor." *Kahhan v. City of Fort Lauderdale*, 566 F.Supp. 736, 739 (E.D. Pa. 1983).   Other than the

parties, the only other witness identified so far is Lance Ufema, President of Rich Coast, who resides and works in the Middle District.  The Court notes that Lance Ufema was unable to travel to the Western District for the evidentiary hearing due to a medical emergency.  Should his underlying condition need further attention, his appearance at future court proceedings in the Western District may be restricted.  No other witnesses or their locations have been identified thus far.  This factor weighs slightly in favor of transfer.

Finally, there is no indication that the location of files, books and/or records of the parties could not be produced in the Middle District.  Therefore, this factor does not weigh against transfer to the Middle District.

### 2. <u>Public Interests</u>

With regard to the public interests, three of these factors favor transfer—the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; and the local interest in deciding local controversies at home.  If Plaintiff were to succeed on her claims against Rich Coast, she would be able to enforce the judgment against the corporation in the Western District, but since this Court lacks personal jurisdiction over the Ufemas, any judgment in the Western District could not be enforced against them in this District. In addition, it is more expeditious and better use of judicial resources to try these claims against all of the Defendants in one forum than to try two separate actions simultaneously in two different fora. The Middle District has a stronger interest in having these claims heard there as Defendants are all residents of that forum and do business in that forum. Plaintiff is no longer a resident of the Western District, and thus, the Western District would not have a strong local interest in having this case proceed before it.  The remaining factors are neutral—the parties have not provided any statistical information to show that any administrative

difficulty exists in either the Middle District or the Western District due to a backlog of cases; the public policies of the fora would be the same as both are located in the Commonwealth of Pennsylvania; and similarly, as both trial judges are located in Pennsylvania, both are familiar with the applicable Pennsylvania law that would apply to Plaintiff's state law claims if supplemental jurisdiction is exercised over them.

For all the above reasons, Defendants have met their burden of showing that "the convenience of the parties and witnesses, and the interest of justice weigh in favor of [a] transfer" to the Middle District of Pennsylvania, which is unquestionably the more proper and convenient forum.

### F.  Plaintiff's Request for Jurisdictional Discovery

In the alternative, Plaintiff asks that if the Court finds that transfer is appropriate on *forum non conveniens* grounds, that she be granted leave to conduct "brief and limited discovery to clarify this issue as it was raised *sua sponte* by the Court after the evidentiary hearing wherein testimony in defense of the assertion of manifest injustice was not anticipated and, consequently, was not specifically elicited." Pl.'s Supp. Br. at 14 (ECF No. 26). Our Court of Appeals "has stated that leave to conduct jurisdictional discovery should be freely granted." *Molnlycke Health Care,* 64 F.Supp. 2d at 454 (citing *Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 283-84 (3d Cir. 1984)). The court has discretion, however, to determine whether such discovery is warranted and the scope of such discovery. *Id.* (citing *Hansen v. Neumueller GmbH,* 163 F.R.D. 471, 475 (D.Del. 1995)). The court of appeals has instructed that a plaintiff should be granted leave to conduct jurisdictional discovery where the "plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the

party] and the forum state[.]'" *Toys "R" Us,* 318 F.3d at 456 (citing *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir. 1992)).

In the case at bar, the Court finds that the parties were given adequate notice and time (*see* Text Order dated 10/30/13—parties had 5 weeks from date of evidentiary hearing to file supplemental briefs) to brief the issue of *forum non conveniens* after receiving the transcript from the evidentiary hearing on the venue/personal jurisdiction issue. Plaintiff has failed to allege what additional facts are necessary to decide the *forum non conveniens* issue, and the Court cannot envision any additional facts that would assist her in arguing against such a transfer. Accordingly, the Court will deny Plaintiff's request for jurisdictional discovery on the *forum non conveniens* issue.  *Croyle v. Hutchison,* Civ. A. No. 11-1141, 2012 WL 2358999, *6 (W.D.Pa. June 20, 2012) (holding that "[b]ecause it is unclear what facts Plaintiff believes she will uncover to overcome [the court's findings that defendants did not purposefully direct its activities at Pennsylvania and that her cause of action did not arise from any of defendant's forum-related activities], and Plaintiff has not otherwise suggested to the Court how discovery will aide her in establishing jurisdiction, her request is denied.")

## III.  **CONCLUSION**

For the reasons set forth above, the Court will grant the Motion to Transfer Venue under Rule 12(b)(3) (ECF Nos. 11) filed by Defendants Julie Ufrema and Jason Ufrema d/b/a Group 13 Productions, and will grant the Motion to Transfer Venue (ECF No. 13) filed by Defendant Rich Coast Corporation on the alternative basis of 28 U.S.C. §1404(a).

An appropriate order will follow.

Dated:   February 11, 2014                     BY THE COURT:

                                            __/s Lisa Pupo Lenihan_____
                                            LISA PUPO LENIHAN
                                            Chief United States Magistrate Judge

cc:      All Counsel of Record
              *Via Electronic Mail*