## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ABBEY FARKAS,                :       Civil No. 1:14-CV-272

                            :

      **Plaintiff**             :       **(Judge Jones)**

                            :

v.                       :       **(Magistrate Judge Carlson)**

                            :

RICH COAST CORPORATION, et al.,  :

                            :

      **Defendants**           :

## REPORT AND RECOMMENDATION

### I.      Introduction

Oftentimes legal outcomes turn on the question of the proper characterization of an economic relationship. This is one such case. This mutually acrimonious dispute, arising out of a brief artistic collaboration in the 2011 production of a film, "Caveat", has now consumed the past five years, and embroiled these parties in contentious disputes in four separate state and federal courts. Included among the many competing and conflicting claims asserted by the parties in this longstanding and bitter lawsuit are statutory minimum wage claims lodged by the plaintiff, Abbey Farkas, who was hired by the defendants, producers of a 2011 motion picture, "Caveat", to serve as the head editor for this film. Farkas has filed claims against the defendants under the Federal Fair Labor Standards Act

(FLSA), and Pennsylvania's Wage Act, asserting that she was an employee of the defendants, and as such, was entitled to receive the statutory minimum wage for the hours she alleges she worked on this film project in the Fall of 2011. For their part, the defendants have resisted these wage claims, arguing that Farkas served as an independent contractor on this film project, and as an independent contractor was not covered by these federal and state wage laws.

Despite this sharply drawn factual disputes concerning the proper characterization of Farkas' work and duties, these state and federal wage claims are now the subject of a motion for summary judgment filed by the plaintiff, (Doc. 194), who seeks judgment as a matter of law in her favor on regarding her entitlement as an employee of the defendants to these specific wages. We find, however, that the competing and contrasting positions of the parties concerning the proper characterization of this working relationship are not subject to resolution on a motion for summary judgment. Quite the contrary, in our view several considerations combine to defeat any summary judgment consideration of this issue. As to these claims, while all of the parties concede that some sort of working relationship existed between them, none of the parties are able to agree upon the proper description of that working relationship, and each party advances strikingly different factual narratives relating to their subjective impressions concerning the nature of this job and working relationship. These competing

narratives cannot be readily reconciled, and we find that the chaos created by the parties' casual approach to these issues simply is not amenable to any determination as a matter of law on the record presently before us. Further, and in line with the on-going acrimony which has marked this litigation, we also note that any determination of this threshold question concerning whether Farkas would qualify as an "employee" covered by these wage laws, or is more aptly described as an "independent contractor" who is exempted from these laws, is complicated by the visceral adversarial nature of the litigants who in their legal struggles with one another during the past five years have, on occasion, taken internally inconsistent positions regarding the nature of their working relationship. Therefore, it is recommended that this motion for partial summary judgment be denied.

## II. <u>Statement of Facts and of The Case</u>

With respect to Farkas' motion seeking a judgment in her favor as a matter of law on these state and federal wage act claims, (Doc. 194), the pertinent facts can be simply stated:

In the summer of 2011 Julie and Lance Ufema, acting through an unincorporated entity, Group 13 Productions, commenced filming of an independent film, entitled "Caveat." In connection with this film project the Ufemas utilized the talents of a group of film editors, including the plaintiff, Abbey

Farkas. The agreement between Farkas and the defendants was an oral agreement which was negotiated in approximately September of 2011. The principal parties negotiating this oral understanding between the parties appear to have been Abbey Farkas and Julie Ufema, and it seems undisputed that neither party ever reduced their understanding to writing, a mutual failure which now subjects any analysis of the proper characterization of this working relationship to the distorting effects of hindsight.

What the parties do appear to agree upon is that Abbey Farkas was hired as the head editor of the film "Caveat," and that others also performed film editing work on this project. The parties also seem to mutually concede that Farkas did some film editing work, but disagree as to the scope of that work. The parties also have taken contrasting and occasionally internally inconsistent views regarding the degree to which Farkas worked independently as a film editor exercising her own artistic license in the creative process which led to the film "Caveat." Thus, Farkas now claims that her work was closely controlled, managed and overseen by the defendants to a degree that properly allows her to be called their direct employee for purposes of a wage act claim. Yet, Farkas has also asserted that she exercised sufficient artistic independence in this work that the copyright on the work rightfully belongs to her. Moreover, Farkas insists that "Caveat's" copyright belongs exclusively to the plaintiff, and this work may not be considered as a

"work for hire" under copyrights laws; that is, a work prepared by an employee at the direction of an employer. Thus, Farkas seemingly adopts mutually inconsistent positions when discussing her status as an employee of the defendants depending upon whether she is advancing copyright or wage act claims.

The defendants also adopt what seem to be internally inconsistent views on this issue at various times in the course of this litigation. Thus, for example, when confronted by these wage act claims brought by Farkas the Ufemas have insisted that Farkas was an independent contractor and as such fell beyond the reach of these laws. Yet, some of the accounting and tax treatment of payments provided to Farkas in 2011 is much more akin to the treatment given an employee rather than an independent contractor, and when advancing their replevin claim seeking the return of a hard drive containing footage of "Caveat" the Ufemas have argued that Farkas was their employee and as their employee may not raise certain defenses to this replevin action.

None of the seeming inconsistencies in the parties' positions on these questions which are fundamental to the wage act claims have been fully reconciled in this motion. Instead, the parties agree that Farkas received a $750 payment from the defendants, while disputing whether this payment was all that Farkas was entitled to receive. Indeed, the entire nature of the working relationship between these parties is shrouded in confusion, mutual recrimination, and hotly contested

factual disputes that are clouded by the hindsight of more than five years. For her part, Julie Ufema has on occasion described an independent contractor arrangement in which Farkas agreed to accept the entire, and entirely modest, film editing budget of "Caveat", $750,[1] and in turn agreed to complete all of the film editing necessary for this project in a professional fashion which would enable Ufema to commercially distribute the movie. Julie Ufema has also described this work as fixed and finite in its scope and duration. The Ufemas wished to premiere "Caveat" in December of 2011, therefore, Julie Ufema—who had only limited film production experience—has testified that a one-month film editing deadline was part of her oral understanding with Farkas. Thus, the defendants assert that Julie Ufema has described an oral independent contractor agreement in which Farkas was to receive a set payment--$750—for the completion of a set task—complete film editing of "Caveat—in a set time frame—one month—but otherwise was given wide-ranging freedom and artistic license in the completion of this task.

Farkas contests each of these material elements of this oral understanding, as outlined by Julie Ufema. Thus, Farkas now seems to assert that she was a wage employee, whose actions were closely supervised and overseen by Ufema, who was entitled to hourly wage payments beyond the initial $750 paid by the

---

[1] In addition to this $750 payment, the parties have also noted that Farkas was permitted to live with the Ufemas for a period of time in the Fall of 2011, although the parties seems to dispute whether that housing arrangement was part of their oral agreement, or merely some side accommodation.

defendants.  While this is Farkas' current legal posture, her first assertion of any right to additional payments seems to have occurred months after this film project ended, and "Caveat" enjoyed its December 2011 world premiere.  Moreover, these wage claims by Farkas have shifted and changed over time.  Initially, Farkas only seemed to claim entitlement to a second $750 payment, and appeared to voice an understanding that she was entitled to $750 per month for her work on "Caveat," As time passed this straightforward but fairly minor allegation transformed into the wage act claims which are now before the Court.

By the Spring of 2012, this brief and poorly articulated artistic collaboration between the Ufemas and Farkas had descended into acrimony and litigation, with Farkas filing a wage lawsuit against the Ufemas, Rich Coast Corporation and Group 13 Productions in the Court of Common Pleas of Allegheny County on May 7, 2012.  As Farkas was launching this legal assault on the defendants in the Court of Common Pleas of Allegheny County, Group 13 Productions endeavored to launch its own counter-attack against Farkas in the Court of Common Pleas of Mifflin County.  This opening legal foray consisted of an action in replevin filed solely in the name of Group 13 Productions in Mifflin County courts in July 2012,

seeking the return of the hard drive held by Farkas, a hard drive that Group 13 Productions estimated had a value of $35,000.[2]

In August of 2012, Farkas filed preliminary objections to this replevin action. These preliminary objections did not relate to the merits of any claim for the return of this property. Instead, the preliminary objections focused on the capacity of the sole named plaintiff, Group 13 Productions, an unincorporated entity, to maintain this lawsuit. Thus, the preliminary objections were framed in terms of Group 13 Productions' capacity to sue, and the failure to join proper party-plaintiffs. The state court agreed with these objections, and dismissed this action. While Group 13 Productions had the option of re-pleading its case, it did not do so, but instead sought reconsideration of this ruling. That motion to reconsider was denied, and on October 24, 2012, the Mifflin County Court of Common Pleas dismissed the action brought by Group 13 Productions with prejudice.[3]

---

[2] In their motion papers, the parties vigorously contest the value of this hard drive and its contents, with the plaintiff arguing that the hard drive itself was only worth $119 and asserting that the film footage contained on the hard drive was simply duplicative of footage already possessed by the Ufemas and thus had no additional intrinsic value. Farkas cites the inflated value of this claim as proof of the Ufemas bad faith as a matter of law. The Ufemas, in turn, defend their valuation of this hard drive, describing the hard drive as containing invaluable film footage and placing the value of the hard drive and footage in an amount commensurate with the total cost of the film.

[3] The defendants have renewed this replevin claim as a counter-claim in this federal lawsuit. Farkas has by a separate partial summary judgment motion sought

This dispute then began to take on federal legal dimensions, as Farkas asserted a copyright on "Caveat" based upon her film editing work on this movie. Ultimately in 2013, Farkas applied for, and received, a copyright registration for this work.[4] Notably, Farkas initially described this film as a work for hire in her copyright application, but later abandoned this description when she was informed that a work for hire was a composition prepared by a person employed by another.

This lawsuit then followed, with Farkas filing an eleven count civil complaint against Julie and Lance Ufema, doing business as Group 13 Productions, and Rich Coast Corporation in the United States District Court for the Western District of Pennsylvania in July of 2013. In her complaint Farkas alleged copyright infringement, state and federal wage act violations, abuse of process, and negligence claims. (Doc. 1) Included among these claims, were wage claims brought by Farkas under the Fair Labor Standards Act, (Doc. 1, Count V), the Pennsylvania Wage Payment and Collection Law, (Doc. 1, Count VI), and the Pennsylvania Minimum Wage Act of 1968. (Doc. 1, Count VII.) Integral to each of these claims is Farkas' assertion that she was an employee of the defendants who possessed a statutory entitlement to certain minimum wages, and was not

judgment in her favor on this counter-claim on *res judicata* grounds. We have now addressed this separate motion for partial summary judgment recommending that the court deny Farkas' request to assert *res judicata* as a legal bar to this counter-claim.

[4] The validity of this copyright is yet another contested issue in this case and is the subject of separate, competing summary judgment motions.

working as an independent contractor during the six week period in September and October of 2011 when she performed film editing work on "Caveat."

Farkas has now moved for summary judgment on these wage act claims, (Doc. 194), arguing in the face of the murky circumstances surrounding her employment that there is no dispute as to any material fact, and asserting that she is entitled to a judgment in her favor on these statutory claims as a matter of law. Because we find that this is a fact-bound, and factually disputed question, for the reasons set forth below we disagree and recommend that the district court deny this motion.

## III.  <u>Discussion</u>

### A. <u>Summary Judgment Standard of Review</u>

The plaintiff has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56 (a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary

formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides

merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the

12

opposing affidavit is also not sufficient." <u>Lockhart v. Hoenstine</u>, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985)(citing <u>Ness v. Marshall</u>, 660 F.2d 517, 519 (3d Cir. 1981)). In particular, a plaintiff cannot avoid summary judgment by simply relying upon a self-declaration that he has authored which relies not on evidence, but on the plaintiff's own interpretation of events and, essentially, opinion testimony. <u>See</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990) (the nonmoving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with the conclusory allegations of an affidavit."); <u>Iseley v. Beard</u>, No. 02-2006, 2009 U.S. Dist. LEXIS 52014, *32 (M.D. Pa. Mar. 30, 2010) (conclusory allegations contradicted by documentary evidence cannot be accepted as true). Yet, while "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment," <u>Countryside Oil Co., Inc. v. Travelers Ins. Co.</u>, 928 F.Supp. 474, 482 (D.N.J.1995), and "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions," <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985), the court must "consider all evidence in the light most favorable to the party opposing the motion." <u>A.W. v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

Finally, it is emphatically not the province of the court to weigh evidence, or assess credibility, when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Id. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

14

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

It is through this analytical lens that we now assess Farkas' motion for partial summary judgment on these wage act claims.

## B. <u>Guiding Principles Defining Employees for Wage Act Claims</u>

In this case Farkas is pursuing wage claims under several closely related state and federal statutes, but her principal claims are brought under the federal Fair Labor Standards Act, (FLSA), and its state statutory analogue.[5] The FLSA prescribes the federal standards for minimum wage and overtime payments for public and private employees. It applies to an "enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 203(e)(1). The FLSA defines such an enterprise as one that:

---

[5] Farkas also brings a claim under the Pennsylvania Wage Payment Claim Law, 42 Pa.C.S. §260.1, but this claim does not provides any new or additional substantive rights for the plaintiff beyond those prescribed by the FLSA since it is well settled that this Act " ' "does not create a right to compensation .... [r]ather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned." ' <u>Antol v. Esposto</u>, 100 F.3d 1111, 1117 (3d Cir.1996) (quoting <u>Weldon v. Kraft, Inc.</u>, 896 F.2d 793, 801 (3d Cir.1990))." <u>De Asencio v. Tyson Foods, Inc.</u>, 342 F.3d 301, 309 (3d Cir. 2003).

(i) has employees engaged in commerce or in the production of goods for commerce or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(e)(1)(A).

Farkas also brings a claim under Pennsylvania's analogue to the FLSA, the Pennsylvania Minimum Wage Act, which creates a separate statutory obligation for employers to pay the federally prescribed statutory minimum wage to their employees. See 43 Pa. C. S.. § 333.104. Because the Pennsylvania Minimum Wage Act "parallels the FLSA in requiring employers to compensate employees for overtime hours worked, and has an identical standard of liability as the FLSA in overtime violation claims," courts analyze these two statutory wage claims under the same basic analytical framework. Davis v. Abington Memorial Hospital, 765 F.3d 236 (3rd Cir. 2014); Alders v. City of Philadelphia, 919 F.Supp.2d 528, 557–60 (E.D. Pa. 2013).

Integral to both statutes is an assessment of the plaintiff's employment status, since the Acts only provide an entitlement to a statutory minimum wage for "employees," a term which is defined to mean "any individual employed by an employer." 29 U.S.C. § 203 (e) (1). Therefore, a threshold consideration regarding whether federal or state wage laws apply to a specific working

relationship entails a determination of whether the worker claiming entitlement to these minimum wages was an "employee" or worked as an "independent contractor". On this score, the controlling legal principles which guide our analysis can be aptly summarized in the following terms:

> There is no single test to determine whether a person is an employee or an independent contractor for purposes of the FLSA. See id. at 1293. Under the FLSA, an independent contractor is not protected; the FLSA applies only to employees of covered employers. See 29 U.S.C. § 201; see also Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1386 (3d Cir.1985). "[O]f all the acts of social legislation, the Fair Labor Standards Act has the broadest definition of 'employee.'" Donovan, 757 F.2d at 1382. It defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and broadly defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1). In light of this "expansive definition[,]" the Third Circuit has developed the following six-factor test to determine whether a plaintiff is an "employee" under the FLSA: (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending on his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business. See Martin, 949 F.2d at 1293. In considering these factors, the court should also look to the totality of the circumstances and consider whether "as a matter of economic reality, the individuals are 'dependent upon the business to which they render service.'" Id.

Cherichetti v. PJ Endicott Co., 906 F. Supp. 2d 312, 316 (D. Del. 2012).

Adopting this fact-bound, and multi-factorial test, courts have frequently held that held that when there exist disputed issues of material fact relating to a

worker's status as either an employee or an independent contractor summary judgment is inappropriate on any wage act claim. See e.g., Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1381 (3d Cir. 1985); Crump v. HF3 Constr., Inc., No. CV 14-4671, 2016 WL 6962532, at *4 (E.D. Pa. Nov. 29, 2016); Cherichetti v. PJ Endicott Co., 906 F. Supp. 2d 312, 316 (D. Del. 2012).

## C. **Factual Disputes Preclude Summary Judgment on These Wage Act Claims**

In this motion for partial summary judgment, the plaintiff, Abbey Farkas, seeks a judgment in her favor as a matter of law on these wage act claims. Essential to summary judgment success on these specific claims is a finding that Farkas has shown as a matter of law, and beyond any factual dispute, that she was an employee entitled to these statutory wages.

On the present factual record we simply cannot make this legal leap. In particular we note at the outset that a singular circumstances presently hobbles us in reaching any conclusions as a matter of law concerning the employment status of Farkas: In the course of their business dealings, and at times during this litigation, each party has engaged in conduct which contradicts to some degree the legal positions which they now assert on these wage act claims. For example, Farkas now insists that she was an employee, a mere hireling of the defendants whose actions were closely controlled by these defendants. However, this

assertion is at odds with Farkas' conduct when she applied for a copyright for the film "Caveat."  At that time, in response to queries from the Copyright Office, Farkas denied that "Caveat" was a "work for hire" as that term is defined under the copyrights laws.  Thus, in this case Farkas asks us to conclude as a matter of law that she was a hireling, but did not create a work for hire.

Likewise, the Ufemas have indulged in some internally inconsistent positions and conduct with respect to their treatment of Farkas' work status.  While the defendants now describe Farkas as an independent contractor, they appear to have treated her as an employee for tax and payroll purposes in 2011.  This conduct, while not wholly dispositive of Farkas' work status, is certainly relevant and may be probative to a determination of that work status.  Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988)(tax treatment of worker probative evidence concerning employment status).  Therefore, at the outset, we are confronted with a situation where each party has at various times cast their working relationship in different terms to perhaps address different legal needs.  At a minimum these internally inconsistent positions of all parties create factual issues which cannot be determined as a matter of law on summary judgment.

Moreover, our assessment of the six factors we are enjoined to examine when considering the work status of a plaintiff under federal and state wage laws

leads us to the conclusion that disputed factual issues preclude summary judgment on this question. We discuss each of these factors separately below:

## 1. Degree of Control

Turning first to the degree of control exercised by the Ufema defendants over Farkas' activities, we find the factual record is mixed, equivocal and marked by contradictory claims. At the outset, to be sure, the Ufemas appear to have exercised a great deal of control over the worksite where Farkas would perform this film editing, largely mandating that she perform this work at their residence. However, when one considers the intellectual and artistic component of the work, a crucial aspect of this particular work setting, the factual picture is far murkier. For her part, Farkas has asserted that she enjoyed great artistic independence and license in performing her film editing tasks, going so far as to assert that her independent creativity on this project affords her a copyright in the final version of this film. The Ufema defendants, in turn, have staked out several different views on this issue at various times. They have alleged that ultimate artistic control over the final production of "Caveat" rested with them while also insisting that they relied heavily upon the artistic skill and imagination of Farkas to complete the film editing of this work, a crucial component of this artistic composition. Thus, as to this fact, the evidence is contradictory, rests in an equipoise, and may require

assessment of witness credibility, a task which lies beyond a motion for summary judgment.

## 2. Employee's Opportunity for Profit

As for the second factor considered in this analysis, the alleged employee's opportunity for profit or loss depending on his managerial skill, this consideration seems to cut against Farkas. There is no indication that Farkas had any opportunity for profit, or loss, tied to this film project. Instead, the evidence seems to indicate that she was hired, for a finite period of time at a finite, but disputed, rate of compensation, to perform a specific artistic task, film editing. Thus, consideration of this factor does not materially advance Farkas' wage act claim.

## 3. The Alleged Employee's Investment in Equipment or Materials Required for the Task

Consideration of the third applicable factor in this economic realities employment test, the alleged employee's investment in equipment or materials required for the task, also presents a mixed picture in this case. While it seems clear that the Ufema defendants invested in a $119 hard drive to assist in film editing, and allowed use of their computer equipment for this purpose, Farkas acknowledges that she also employed her own personal laptop computer to do film editing work on "Caveat." Thus, both parties appear to have made some mutual and modest investment of resources and tools to complete this task, mutual

investments which ultimately do little to resolve this work status issue as a matter of law.

## 4. **Whether the Service Rendered Requires a Special Skill**

The fourth factor we are cautioned to examine is whether the services provided by the worker required a special skill. Here we find that Farkas' duties entailed a special skill—film editing—but note that this skill was required only for a specific project, and was needed only for a very limited period of time. Thus, the special skill requirement, coupled with the specialized and finite need for that skill, suggests that the economic realities of this assignment were not equivalent with on-going employment, but reflected the retention of Farkas as a contractor to complete a specific and specialized task.

## 5. **The Degree of Permanence of the Working Relationship**

This fifth factor we are called upon to consider, the degree of permanence of the working relationship, seems to cut strongly against Farkas' claim that the economic realities of this work arrangement defined her as an employee of the Ufema. By all apparent measures, Farkas' work was fleeting and finite in its duration. The work entailed a single, specific but specialized task, film editing for the movie, "Caveat." The parties appear to have anticipated a scope of work which would only last approximately one month, and there is nothing about this fleeting

working relationship that would have created a reasonable expectation of on-going employment.

6. **Whether the Service Rendered is an Integral Part of the Alleged Employer's Business**

The final factor we must consider--whether the service rendered is an integral part of the alleged employer's business—has an equivocal quality but generally weighs in favor of Farkas' employment claim. To the extent that we are considering Farkas' role in this specific film-making project, completion of film editing would seem to be an integral part of the project itself. However, if we look at this work in a broader economic context, at times the defendants seem to have described the filming of "Caveat" as a side avocation, or an artistic hobby, and certainly the production of "Caveat" was not integral to the overall business operations of Rich Coast Corporation. Therefore, assessment of this factor may favor Farkas to some degree, but not in a fashion which compels summary judgment in her favor given the full array of contested and contradictory factual considerations which litter the record of this case.

In sum, applying this this fact-bound and multi-factorial test to the contested and contradictory circumstances presented here, we find that disputed issues of material fact relating to Farkas' status as either an employee or an independent contractor abound. Accordingly, summary judgment is inappropriate on any wage

act claim at this time.  See e.g., Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1381 (3d Cir. 1985); Crump v. HF3 Constr., Inc., No. CV 14-4671, 2016 WL 6962532, at *4 (E.D. Pa. Nov. 29, 2016); Cherichetti v. PJ Endicott Co., 906 F. Supp. 2d 312, 316 (D. Del. 2012).[6]

## IV.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that Farkas' motion for partial summary judgment on the plaintiff's wage act claims, (Doc. 194), be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing

---

[6] While we conclude that Farkas' employment status is not amenable to resolution as a matter of law on summary judgment, we are mindful of the fact that "employment status . . . is a legal conclusion."  Martin v. Selker Bros., 949 F.2d 1286, 1292 (3d Cir. 1991).  Therefore, if the court adopts this Report and Recommendation, the district court may also consider referring this question to the undersigned for the purpose of conducting a plenary hearing into these factual questions, and submitting an additional Report and Recommendation on this issue with the benefit of a fully developed factual record.

requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 24th day of May, 2017.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge