# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ABBEY FARKAS,** | : | Civil No. 1:14-CV-272 |
| | : | |
| Plaintiff | : | (Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **RICH COAST CORPORATION, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION AND ORDER

I. **Introduction and Background**

This litigation undeniably has a protracted and tortured procedural history, one which is entirely out of proportion with the actual dimensions of the dispute which initially divided the parties. In truth, while this case has sometimes been cast as a great and all-consuming controversy, this litigation actually springs forth from some small injuries. The dispute which led to this litigation began more than five years ago in April of 2012 when Abbey Farkas and Julie Ufema engaged in an exchange of e-mails. At that time Farkas and Ufema were each seeking modest mutual accommodations from one another in the wake of their joint involvement in an independent film project, the production of what even the defendant characterizes as a relatively insignificant independent film, a movie entitled "Caveat." For her part, Ufema sought the return of a hard drive which contained

raw footage of this film, a hard drive which Farkas had retained following her brief two month involvement as a film editor on this movie in the Autumn of 2011. Farkas, in turn, was seeking an additional $750 payment from Ufema, money that Farkas claimed she was owed for her work on this film. The discussion between Farkas and Ufema swiftly descended into mutual acrimony. That acrimony sowed the seeds of this lawsuit, litigation which has now encompassed half a decade, and spanned four separate state and federal courts. Over time the claims and counter-claims which the parties have leveled against one another have grown and multiplied and this case has transmogrified into some far different from the discrete dispute that divided the parties in April of 2012.

For the past two years we have assiduously worked with counsel to clarify, identify, narrow and focus the issues in this litigation. We have also convened numerous conferences with counsel in an effort to allay various fears and concerns voiced by plaintiff's counsel. Finally, at the direction of the district court we have engaged in efforts to determine whether this dispute could be amicably resolved. Throughout the past two years plaintiff's counsel has repeatedly sought our assistance, and we have endeavored to be unstinting in providing time, energy and assistance to all parties in this lawsuit, in order to help them achieve "the just, speedy, and inexpensive determination of [this] action and proceeding." Fed. R. Civ. P. 1. At no time during these two years has plaintiff's counsel suggested in

any way that our recusal was necessary. Quite the contrary, plaintiff's counsel has routinely enlisted our aid during this extended period to address a host of perceived grievances.

Now that we have completed this task, though, plaintiff counsel's views have apparently suddenly, dramatically, and unjustifiably changed. This case, which is on the eve of scheduling for trial, comes before us for consideration of one final pretrial motion, a motion filed by the plaintiff and captioned as an omnibus motion to address alleged procedural and substantive issues. (Doc. 243.)[1] Embedded within this omnibus motion is a curious request, a motion that seeks our recusal at the very time that our involvement in this case was drawing to a close with the completion of the pre-trial management of this litigation.

This recusal request is premised on a fact that Farkas acknowledges that she has known for some 18 months, since May of 2016. One of the defense counsel in this civil lawsuit, Mr. Snook, formerly served as the District Attorney of Mifflin County and was cross-designated as a Special Assistant U.S. Attorney at a time when I served in the United States Attorney's office. In this capacity it appears that Mr. Snook participated in two cases undertaken by the United States Attorney's

---

[1] This omnibus motion also raises a number of potentially case dipositive claims and arguments. These matters will be addressed separately in a Report and Recommendation.

Office in 1999, some 18 years ago. See United States v. Caban, Cr. No. 1:CR-99-133; United States v. Aitkin, Cr. No. 1:CR-99-270. My own association with the United States Attorney's office ended eight years ago in 2009, when I assumed my current position. It is this tangential, temporally remote, and topically unrelated connection to Mr. Snook which Farkas now claims to be disqualifying as a matter of law.

This oddly timed and meritless request calls to mind the observation ascribed to Albert Einstein that doing the same thing over and over again and expecting different results is the highest form of folly. Regrettably, recusal requests aimed at magistrate judges whose rulings displease Farkas has been a sad, but familiar, theme for Farkas in this litigation. Indeed, we note that the magistrate judge who oversaw this case in the Western District of Pennsylvania was subjected to a similar motion when she ruled against Farkas on some pre-trial motions in 2013 and 2014. Now, as our association with this case draws to a close, we too are compelled to address a recusal request by Farkas' counsel. Thus, every magistrate judge associated with this case has now been required to respond to recusal requests and baseless accusations of impropriety leveled by Farkas.

There is a further irony to this particular motion which highlights the feckless, erratic and dilatory manner in which the plaintiff has proceeded in this

4

litigation. Had Farkas taken no action in this case our involvement in this lawsuit would have already come to an end. Our involvement in this case would have ended because we had completed the pre-trial management of this litigation, addressed all of the potentially dispositive motions filed in this matter, and concluded the mediation efforts directed by the court. Since all that remained was trial scheduling, and the parties had not consented to magistrate judge jurisdiction, our work here was done. That is, our work was done until Farkas lodged her belated omnibus motion which, *inter alia*, requested our recusal. Accordingly, before we can voluntarily depart this litigation we must address these belated claims, including Farkas' recusal motion.

Therefore, in the final irony caused by plaintiff's often paradoxical approach to this litigation, we are called upon to deny this request for recusal before we can now withdraw from this litigation in the ordinary course of our duties. Mindful that "a judge 'has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require'" Conklin v. Warrington Township, 476 F.Supp.2d 458, 463 (M.D. Pa. 2007), for the reasons set forth below we find that the grounds for recusal posited by Farkas' counsel are untimely, expedient, procedurally flawed, and illegitimate. Therefore, the request for recusal must be denied.

## II. Discussion

### A. Recusal Motion–Standard of Review

The legal standards which govern such recusal requests were aptly summarized in Conklin v. Warrington Township, 476 F. Supp. 2d 458 (M.D. Pa. 2007). In terms that are equally applicable here, the court explained that:

> The disqualification standard is set forth in 28 U.S.C. § 455, which provides in pertinent part as follows:
>
> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party....
>
> Id. Pursuant to the above quoted language, the court must consider whether its rulings and statements objectively produce the appearance of bias against [the plaintiff]. As explained by the Supreme Court, these provisions "require ... 'bias and prejudice' ... to be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." Liteky v. United States, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). This objective standard requires recusal when a "reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality." Edelstein v. Wilentz, 812 F.2d 128, 131 (3d Cir.1987) (citing United States v. Dalfonso, 707 F.2d 757, 760 (3d Cir.1983)); see also In re Antar, 71 F.3d 97, 101 (3d Cir.1995). If the record presents a close question, the court must resolve the issue in favor of disqualification. Nichols v. Alley, 71 F.3d 347, 352 (10th Cir.1995).

Id. at 462-3.

It is clear, however, that a party's disappointment with what the party anticipates may be the court's rulings cannot form the basis for recusal. As we have observed:

> The Third Circuit has repeatedly observed that "a party's displeasure with legal rulings does not form an adequate basis for recusal." Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 278 (3d Cir.2000) (citing In re TMI Litig., 193 F.3d 613, 728 (3d Cir.1999) and Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990)). Subsections 455(a) and (b)(1) require the source of bias to be extrajudicial, that is stemming from a source outside of the proceeding, or of such an intensity as to make a fair trial impossible. Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253 (3d Cir.1995), cert. denied, 516 U.S. 915, 116 S.Ct. 303, 133 L.Ed.2d 208 (1995). As stated by the Supreme Court:
>
>> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.
>
> Liteky, 510 U.S. at 555, 114 S.Ct. 1147 (emphasis in original).

Id. at 463.

Furthermore, in assessing recusal requests, courts must remain mindful that, in the hands of some litigants, a recusal motion may simply be a calculated tactical tool designed to avoid the result which the law dictates in a case, or attempt to unilaterally choose a new judge. Thus, in every instance:

> [T]he court must consider whether attacks on a judge's impartiality are simply subterfuge to circumvent anticipated adverse rulings. In re Antar, 71 F.3d at 101; Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 162 (3d Cir.1993). Indeed, a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 659 (10th Cir.2002) (quoting Nichols, 71 F.3d at 351); Cooney v. Booth, 262 F.Supp.2d 494, 508 (E.D.Pa.2003); see also United States v. Snyder, 235 F.3d 42, 46 n. 1 (1st Cir.2000); Curley v. St. John's University, 7 F.Supp.2d 359, 362 (S.D.N.Y.1998).

Id. at 463.

In order to ensure that recusal requests do not become last-minute devices used by expedient by counsel to attempt to avoid outcomes mandated by law, a recusal motion is "also subject to the requirement that it be 'timely.' See 28 U.S.C. § 144. 'It is well-settled that a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.' Apple v. Jewish Hosp. and Medical Ctr., 829 F.2d 326, 333 (2nd Cir.1987). The Third Circuit has described this requirement as one of 'reasonable diligence.' See Furst, 886 F.2d at 581 n. 30."

Cooney v. Booth, 262 F.Supp.2d 494, 503-4 (E.D.Pa. 2003), aff'd., 108 F.App'x 739 (3d. Cir. 2004).

Moreover, it is clear that a party's use of invective toward the court, or disparagement of the court, cannot create recusal grounds since:

> There is a "well established judicial rejection of a rule that would permit a litigant or attorney to disqualify a judge by criticizing him." United States v. Evans, 262 F.Supp.2d 1292, 1296 (D.Utah 2003) (quoting United States v. Helmsley, 760 F.Supp. 338, 342-43 (S.D.N.Y.1991)). In other words, a litigant cannot unilaterally create the grounds for recusal. See In re Mann, 229 F.3d 657, 658-59 (7th Cir.2000) (filing of judicial misconduct charge in reaction to court's decision insufficient ground for disqualification). As [one court] has observed: "A party cannot cast sinister aspersions, fail to provide a factual basis for those aspersions, and then claim that the judge must disqualify herself because the aspersions, *ex propio vigore,* create a cloud on her impartiality." In re United States, 158 F.3d at 35.

Conklin, 476 F.Supp.2d at 464.

In addition, there are also procedural standards which a party moving for recusal must meet. These standards are prescribed by 28 U.S.C. § 144, which as a procedural matter "mandates recusal '[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party.'" Conklin, 476 F.Supp.2d at 463 n. 10. Thus, a proper, and timely filed, affidavit is a legal prerequisite to a recusal motion, a

necessary step to impress upon all parties the gravity of the proceedings. When such an affidavit is timely filed: "it is the responsibility of the district judge against whom an affidavit is filed to assess the legal sufficiency of the affidavit. United States v. Townsend, 478 F.2d 1072, 1073 (3d Cir.1973) (stating that the mere filing of an affidavit 'does not automatically disqualify a judge'). An affidavit is legally sufficient if the facts alleged therein: (1) are material and stated with particularity; (2) would convince a reasonable person that a bias exists; and, (3) evince bias that is personal, as opposed to judicial in nature. United States v. Thompson, 483 F.2d 527, 528 (3d Cir.1973)." Conklin, 476 F.Supp.2d at 463 n. 10. This is a burden which cannot be met through vague and conclusory accusations, or subjective assertions. Id. (citing Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990) (holding that, to be legally sufficient, an affidavit must contain more than mere conclusory allegations)); Cooney v. Booth, 262 F.Supp.2d 494, 502 (E.D.Pa.2003) (holding that opinions and conclusions based upon conjecture and speculation are legally insufficient to warrant recusal).

Finally, where a recusal request, like this request, is premised upon some prior government service by a judge, such as service as United States Attorney, it is clear that the fact of that prior service does not provide grounds for recusal unless the case at issue involved the United States Attorney's Office and the case at issue arose before the judge left a position of responsibility in that office.

Indeed, such broadly framed recusal requests based upon prior tangential and unrelated involvement by the court and counsel with the United States Attorney's office have long been expressly rejected by the United States Court of Appeals for the Third Circuit, which has held that:

> Since a judge's prior position as a United States Attorney does not require his or her recusal *unless the case at issue arose before the judge left that position*, see Barry v. United States, 528 F.2d 1094 (7th Cir.), cert. denied, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976); In re Grand Jury Investigation, 486 F.2d 1013, 1015-16 & n. 3 (3d Cir.1973), cert. denied, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974), [ a judge's] prior [government] position . . . could not reasonably be deemed to be a basis to question [the judge's] ability to rule impartially in this case.

Edelstein v. Wilentz 812 F.2d 128, 131 (3d. Cir. 1987)(emphasis added).

We are, thus, compelled to note for Farkas' counsel's benefit that courts have repeatedly rebuffed recusal requests like those made here based upon similar, remote and unrelated professional connections between a judge and counsel through prior service in the United States Attorney's office. See e.g., United States v. Miller, 221 F. App'x 182, 183 (4th Cir. 2007); United States v. Martinez, 385 F. Supp. 2d 779, 780 (N.D. Iowa 2005), aff'd, 446 F.3d 878 (8th Cir. 2006)(fact that judge's law clerk was former Special Assistant U.S. Attorney not grounds for recusal); United States v. Oluwafemi, 883 F. Supp. 885, 887 (E.D.N.Y. 1995) (fact that judge and counsel formerly served together in United States Attorney's office held not to be grounds for recusal.)

Judged against these legal standards, we must decline counsel's request that we recuse ourselves from this case for the following reasons:

First, we note that it is apparent from the face of the motion that this request is totally untimely. Farkas' counsel attaches to her motion emails which reflect that counsel has been aware of this unrelated and tangential connection between the court and defense counsel since May of 2016. Knowing this, Farkas' lawyer apparently elected to do nothing for the next 18 months, and only chose to raise this issue in November of 2017, on the eve of trial scheduling, and after the court had devoted extensive time, effort and attention to this case. This delay can only be seen as purposeful and tactical, and appears to be part of a calculated effort to avoid and delay the trial of this case through the belated assertion of collateral concerns. Since the request is completely untimely, it must be rejected. Cooney v. Booth, 262 F.Supp.2d 494, 503-4 (E.D.Pa. 2003), aff'd., 108 F.App'x 739 (3d. Cir. 2004).

Second, the motion contains "no timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party", as required by 28 U.S.C. § 144. This procedural shortcoming also undermines this tardy motion and compels its denial.

Third, given the settled case law which rejects past, tangential historical connections between a judge and counsel based upon prior prosecutorial

experience in unrelated criminal cases as grounds for recusal, this recusal motion plainly fails on its merits. See e.g., United States v. Miller, 221 F. App'x 182, 183 (4th Cir. 2007); United States v. Martinez, 385 F. Supp. 2d 779, 780 (N.D. Iowa 2005), aff'd, 446 F.3d 878 (8th Cir. 2006)(fact that judge's law clerk was former Special Assistant U.S. Attorney not grounds for recusal); United States v. Oluwafemi, 883 F. Supp. 885, 887 (E.D.N.Y. 1995) (fact that judge and counsel formerly served together in United States Attorney's office held not to be grounds for recusal); Edelstein v. Wilentz 812 F.2d 128, 131 (3d. Cir. 1987). In fact on this score in the future Farkas' counsel would be well-advised to keep in mind that his own ethical obligations require him to obtain some rudimentary understanding of the law prior to leveling such grave and unfounded allegations.

While this principal claim in Farkas' recusal motion fails on three separate grounds, there is a second allegation made by Farkas' counsel which merits brief mention. As the parties know, in September of 2017 the district court referred this matter to the undersigned with instructions that I conduct a settlement conference in an effort to assist the parties in reaching a resolution of their dispute. I gladly undertook this effort and with the apparent consent of all counsel scheduled a conference on November 6, 2017. As that conference date approached, however, our office began encountering erratic behavior by Farkas' counsel, who requested that the settlement conference which they had agreed should be scheduled before

the undersigned on the date and time chosen by Farkas and her counsel now be reassigned to another judge.

We notified all counsel that we would accede to this request but also advised counsel that, before we would refer this matter to another judge, it would be necessary for counsel to confirm their willingness to engage in meaningful settlement discussions which had a realistic prospect of resolving the litigation. We took this step mindful of the intransigence which we had observed over the past two years in this litigation. The efforts of counsel to comply with these instructions were initially halting, unclear and occasionally contradictory. Eventually in the days immediately preceding this scheduled conference Farkas' counsel extended a settlement demand which was 370 times greater than the offer proposed by the defendants.

In light of this significant gap that existed between the parties, we cancelled the November 6 settlement conference, and scheduled a telephone conference call instead. We also asked each party to answer questions aimed at discerning whether they was any realistic possibility for settlement here; namely, we asked plaintiff's counsel to advise us if Farkas would ever accept less than $100,000 to resolve this lawsuit. At the same time we instructed defense counsel to inform us regarding whether they would ever offer more than $10,000 to settle this case. We provided

counsel the option of sharing this information with us as a settlement judge confidentially.

Defendants complied with this request and then at the telephone conference that we conducted with all counsel on November 6, 2017 candidly shared with plaintiff's counsel their precise settlement posture in terms that were identical to those previously conveyed to the court as a settlement judge. Plaintiff's counsel immediately and summarily rejected that settlement position as a basis for any discussion, and the settlement conference drew to a close.

Farkas now cites these discussions, and the alleged *ex parte* communication provided to the court in its capacity as a settlement judge, as grounds for recusal or further disclosure of the settlement offer. On this score, Farkas' argument is unavailing for two reasons. First, it ignores the facts. Second, it reflects a fundamental misunderstanding regarding the law as it relates to settlement judges.

First, as a factual matter, Farkas' position is meritless because Farkas fails to acknowledge that defense counsel explicitly disclosed their settlement posture to plaintiff's attorney on November 6, 2017 in terms that were essentially identical to those provided to the court. Therefore, Farkas has already received the information that she demands.

Second, as a legal matter, Farkas' arguments rest on an erroneous premise, since Farkas suggests that it is improper for a settlement judge to receive an *ex*

15

*parte* communication from a party. Farkas is simply wrong on this score. Quite the contrary, it is well settled that it is "not inappropriate for a settlement judge to have *ex parte* communications, in order to facilitate an agreement between the parties. See, e.g., Platypus Wear, Inc. v. U.S. Fid. & Guar. Co., No. 09–2839–JLS (WVG), 2010 WL 4055540, at *1 n. 1 (S.D.Cal.2010); cf. In re Cnty. of Los Angeles, 223 F.3d 990, 993 (9th Cir.2000) (describing difference in the roles of mediators and adjudicators)."In re Complaint of Judicial Misconduct, 647 F.3d 1181, 1181–82 (9th Cir. 2011) (denying misconduct complaint lodged against magistrate judge serving as a settlement judge).

In short, this argument is based both on a false factual premise that material information has been withheld from Farkas' counsel, and on a fatal misapprehension regarding what the law permits and requires of settlement judges. Therefore, this claim is frivolous and does not support this recusal request.

Finally, scattered throughout Farkas' motion to recuse is a profound sense of disappointment regarding the court's past rulings on various matters. While we appreciate that the role of the judge, and the task of deciding, entails the risk of disappointment for some litigants, that disappointment with legal rulings simply does not translate into grounds for recusal. Quite the contrary, as the court of appeals has repeatedly observed, "a party's displeasure with legal rulings does not

form an adequate basis for recusal." Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 278 (3d Cir.2000) (citing In re TMI Litig., 193 F.3d 613, 728 (3d Cir.1999) and Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990)).

Accordingly, we conclude our legal analysis of this recusal motion as we began that analysis by reminding Farkas' counsel that "a judge 'has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require'" Conklin, 476 F.Supp.2d at 463. Guided by this basic truth, the latest of Farkas' recusal motions in this lawsuit will suffer the same fate as the prior recusal motion Farkas lodged against the previous magistrate judge assigned to this case. It will be denied.

An appropriate order follows.

### III. **Order**

For the foregoing reasons, the aspect of plaintiff's omnibus motion (Doc. 243), which seeks our recusal is DENIED.

So ordered this 28th day of December, 2017.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge